**TORRES LAW GROUP**
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 687-9294

***Attorneys for Defendants***
*Kendall J.N. Diaz, Aren L. Fabila,*
*John W. Barcinas, Patrick G. Corpuz*
*and Donald Flickinger*

IN THE DISTRICT COURT OF GUAM

----------

JOSE ARLINE DADIVAS DEVELLES,

Plaintiff,

vs.

GOVERNMENT OF GUAM, KENDALL J.N. DIAZ, AREN L. FABILA, JOHN W. BARCINAS, PATRICK G. CORPUZ DONALD FLICKINGER and DOES 1 TO 10,

Defendants.

CIVIL ACTION NO. 1-24-cv-00019

**MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE DISMISSAL OF ALL COUNTS AGAINST DEFENDANTS KENDALL J.N. DIAZ, AREN L. FABILA, AND JOHN W. BARCINAS**

# TABLE OF CONTENTS

**Page Nos.**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. RELEVANT FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Sovereign Immunity Bars Plaintiff's 42 U.S.C. 1983 Cause of Action. . . . . . . . . . . 6

B. Zorn v. Linton, 607 U.S. ______ (2026). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. Additional Basis for Dismissal Under Federal Rules of Civil Procedure (FRCP) 12(b)(6) and 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

D. Standards for Individual Liability Under 42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . 12

E. The Court Should Decline Supplemental Jurisdiction Over Plaintiff's Guam Law Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

<u>**TABLE OF AUTHORITIES**</u>


**CASES** — **Page Nos.**

*Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir., 1997). . . . . . . . . . . . . . . . . . 14

*Amnesty America v. West Hartford*, 361 F.3d 113 (2d Cir. 2004). . . . . . . . . . . . . . . . . 9, 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).. . . . . . . . . . . . . . . . . . . . . . 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Blackburn v. FISK University*, 443 F.2d 121 (6th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . 14

*Brower v. County of Inyo*, 489 U.S. 593, 489 U.S. 596 (1989). . . . . . . . . . . . . . . . . . . . . . . 13

*Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). . . . . . . . . . . . . . . . . . . . . 16

*City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015).. . . . . . . . . . . . . . 8

*Conley v. Gibson*, 355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1089 n.8 (9th Cir., 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018). . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Escondido v. Emmons*, 586 U.S. 38 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*First Hawaiian Bank v. Manley*, 2007 Guam 2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . 10

*Gayle v. Hemlani*, 2000 Guam 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Graham v. O'Connor*, 490 US 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hawaiian Rock Products Corp. v. Ocean Housing, Inc.*, 2016 Guam 4. . . . . . . . . . . . . . 11

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Glick*, 481 F.2d 1033 (2d Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kisela v. Hughes*, 584 U.S. 100, 104, 105 (2018) (per curiam). . . . . . . . . . . . . . . . . . . . . 7, 8

*Levin v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir., 2014). . . . . . . . . . . . . . . . . . . . . . . . 12

*Marx v. Gov't of Guam*, 866 F.2d 294, 298 (9th Cir., 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 814 (1st Cir. 1987).. . . . . . . . . . . . . . . . . . . . . 14

*Paeste v. Gov't of Guam*, 798 F.3d 1228, 1235-40 (9th Cir., 2015). . . . . . . . . . . . . . . . . . . . 7





TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

## TABLE OF AUTHORITIES

(Continued)


**CASES** **Page Nos.**

***Parents for Privacy v. Barr***, 949 F.3d 1210, 1221 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . 11

***Pister v. Garcia***, 791 F.3d 1104, 1110 (9th Cir., 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

***Ramsey v. Muna***, 849 F.3d 858, 860-61 (9th Cir., 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

***Ryan v. Scoggin***, 245 F.2d 54 (10th Cir. 1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

***Svenson v. Google Inc.***, 65 F. Supp. 3d 717, 721 (N.D. Cal. 2014). . . . . . . . . . . . . . . . . . . 12

***Terry v. Ohio***, 392 U.S. 1, 392 U.S. 19, n. 16 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

***Vasques v. Los Angeles County***, 487 F.3d 1246, 1249 (9th Cir. 2007). . . . . . . . . . . . . . . . . 11

***Zorn v. Linton***, 607 U.S. _____(2026). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 11, 12, 16

**STATUTES**

28 U.S.C. §1367(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

28 U.S.C. §1367(c)(3).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 7, 8, 9, 10, 12, 16

42 U.S.C. §2000e-5(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

48 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

48 U.S.C. §1421a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8 G.C.A. §2045. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9 G.C.A. §7.86. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 G.C.A. §3503(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**RULES**

Fed. R. Civ. Proc. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 11, 12

Fed. R. Civ. Proc. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12

Fed. R. Civ. Proc. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. Proc. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INTRODUCTION

This action arises from a traffic stop on March 4, 2023, from which Plaintiff, Jose Arline Dadivas Develles, ("Plaintiff" or "Develles") alleges he was subjected to excessive force by Defendants Kendall J. N. Diaz ("Diaz"), Aren L. Fabila. ("Fabila") and John W. Barcinas ("Barcinas") (hereinafter collectively "Moving Defendants"). Plaintiff initially filed suit against Defendants Government of Guam, Diaz and Fabila. On June 25, 2025, Plaintiff filed a Second Amended Complaint ("SAC") adding Defendants John W. Barcinas, Patrick G. Corpuz ("Cropuz") and Donald Flickinger ("Flickinger"). On March 20, 2026, Defendants Corpuz and Flickinger filed a Motion for Summary Judgment seeking dismissal of all claims against them and a decision on the Motion is pending. In the SAC the claims against Defendants Government of Guam, Kendall J.N. Diaz and Aren L. Fabila remained largely unchanged from the initial Complaints.

Plaintiff alleges 42 U.S.C. 1983 claims in Counts VII-- Deprivation of Federal Civil Rights, Count VIII -- Failure to Intervene (48 U.S.C. § 1983), Count IX-- Government Custom or Policy/Failure to Supervise or Train and Count XII– Attorneys Fees. Plaintiff alleges that the individual Defendants, all Guam Police Department ("GPD") officers, used excessive force in their control and arrest of Plaintiff in violation of 42 U.S.C. § 1983. In his SAC Plaintiff alleges that multiple officers surrounded his vehicle to "gang up on him" and that he was maliciously beaten. Plaintiff alleges that Moving Defendants violated his Fourth and Fourteenth Amendment rights by "unreasonably seizing him and using excessive force". (See SAC at ¶97). Defendants, *inter alia*, asserted the affirmative defenses of failure to state a claim and qualified immunity.

Moving Defendants seek summary judgment and dismissal of claims against them pursuant to Rules 12(b)(1), 12(b)(6) and 56 of the Federal Rules of Civil Procedure ("FRCP"), the statutory provisions set forth below from the Guam Code Annotated ("GCA") and Rules and Regulations regarding Guam police officers actions and authorities. This Motion is supported by the below Memorandum of Points and Authorities, the supporting Declarations filed herewith and the pleadings on file.

I.

## RELEVANT FACTUAL BACKGROUND

Plaintiff alleges he was subjected to excessive force by Defendants Diaz, Fabila, and Barcinas after a traffic stop on March 4, 2023. Officer Diaz was driving a marked patrol vehicle clad in his GRP uniform. Develles was observed speeding and after being paced he was pulled over by Officer Diaz. Diaz approached Develles who wanted to know why he was pulled over. He was told he was speeding and was asked for his license and registration. Develles refused to identify himself or turn over his license and registration. Instead he demanded that the officers show him the radar to prove he was speeding. Diaz asked again for the license and registration and Develles refused. Diaz then returned to his vehicle and requested back up.

Diaz thought Develles had been drinking and for his safety asked Develles to exit his vehicle. Develles refused and Diaz warned him that if he did not exit the vehicle he would pull him out which then happened when Develles remained non-compliant with Diaz' instructions. Officer Barcinas soon arrived and saw Diaz struggling to gain control of the situation and handcuff Develles. Barcinas immediately went to help and in the process of attempting to handcuff Develles, the officers and Develles fell hard to the ground. Develles still refused to cooperate and Barcinas struck Diaz with an open hand to gain compliance. Thereafter Develles ceased his resistance, was handcuffed and arrested. Because Develles was injured during the arrest process he requested medical attention and an ambulance was called. As part of his medical assessment at the hospital blood was drawn. It indicated that Plaintiff's blood alcohol level, two hours after his vehicle was stopped, was at .09ml, above the legal limit for driving on Guam.

Develles unlawfully refused to provide his license and registration, refused to exit his vehicle upon lawful request, and resisted arrest. In the face of Develles' unlawful conduct Diaz became concerned for his safety. Furthermore, Develles was refusing to exit his vehicle and making furtive movements into the interior of his vehicle compromising Diaz' safety. The officers acted in accordance with Guam law and police regulations to

effectuate the arrest. Develles alleges that he was pulled from his vehicle and "maliciously" beaten. (SAC at ¶¶ 16-24). Develles' injuries were the result of the reasonable force used to overcome Develles' unlawful conduct and resisting arrest. The officers used reasonable force was within the focus of the law and unfortunately Develles was injured in resisting arrest. Plaintiff made no allegation of any wrongdoing or misconduct on the part of the Moving Defendants after the arrest.

Section 3503(a) of Title 16 of the Guam Code Annotated ("GCA") states that "The operator of any vehicle shall stop upon the request or signal of any peace officer in proper uniform ... and upon such request or signal the operator shall exhibit, in addition to his license or permit as required by this Title, his registration card, ... for the purpose of establishing his identity. Subsection (d)states that "It shall be unlawful for the operator of any vehicle to refuse to comply with any lawful order, sign or direction of a peace officer..." Develles' conduct violated Section 3503.

8 GCA § 2045 provides that "Any peace officer who has reasonable cause to believe that a person to be arrested has committed an offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or the threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right of self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

Develles had no lawful right to fail to comply with Diaz' requests or to resist arrest. Police officers have the statutory right to use reasonable force. 9 GCA § 7.86 explicitly addresses the limitations of the self-defense justification in Guam criminal law and states "The use of force is not justifiable ...(1)To resist an arrest which the defendant knows is being made by a peace officer in the performance of his duties, ...".

Plaintiff's illegal conduct caused Diaz to be reasonably concerned for his safety and to seek backup. Being faced with active resistance of arrest did not require officers to back off or prevent them from using reasonable force to control and arrest Develles. All of what

happened between the officers and Develles was preventable by Develles' cooperation with Diaz' instructions. Develles' motivation may have been to avoid a DUI but his unlawful conduct lead to the officer's reasonable actions in the arrest of Develles.

II.

## MEMORANDUM OF POINTS AND AUTHORITIES.

On March 23, 2026, the United States Supreme Court issued its Decision in ***Zorn v. Linton***, 607 U. S. ____(2026) which clarified and directly addressed the standard for liability in excessive force claims under 42 U.S.C. § 1983. The holding in ***Zorn*** materially altered the legal landscape governing Defendants Diaz, Barcinas and Fabila's liability analysis and applicable defenses.

Plaintiff was lawfully stopped for speeding at approximately 1:40am on March 4, 2023. Plaintiff was approached by Officer Diaz and was asked for his license and registration. Plaintiff was non-compliant with Defendant Diaz's multiple requests to show his license and registration. Diaz also smelled the odor of alcohol coming from Develles. Faced with these refusals and Plaintiff's uncooperative behavior Diaz was concerned for his safety. Following police procedure for that concern Diaz called for backup. (See p.10, 2nd ¶, Exhibit B to Torres Declaration).

In Plaintiff's SAC's "Factual Background Common to all Claims" he does not contest that Officer Diaz effectuated a lawful stop or that he refused to turn over his license and registration or comply with other commands from Diaz, including to exit his truck.

Defendant Barcinas was in the area of the stop and quickly arrived at the scene. He heard Diaz instructing Develles multiple times to exit the vehicle. However Develles refused. After warning Develles, Diaz attempted to pull the driver out of the vehicle but the Plaintiff leaned back towards the passenger side, refusing to get out of the vehicle. Plaintiff kept moving his hands and feet around to prevent Diaz from pulling him out. However, Diaz was eventually able to pull Plaintiff out of the vehicle while Plaintiff continued to struggle. Plaintiff kept attempting to pull away and Defendant Barcinas assisted by taking hold of Plaintiff's right arm to prevent him from running away and the

parties fell to the ground. Plaintiff continued to violently resist arrest. Plaintiff was instructed multiple times to stop resisting and put his hands behind his back but he refused by tensing up his arms and trying to pull away from Diaz and Barcinas. Plaintiff and Barcinas fell to the ground and Plaintiff continued to resist. Barcinas, in compliance with Police policy, (See p.10, 2nd ¶, Exhibit A to Torres Declaration.) executed an open hand distractionary strike to the right side of Plaintiff's face while instructing him to stop and put his hands behind his back. (See p.6 at ¶¶ 3d and 3e, Exhibit A to Torres Declaration). After the distractionary strike, as permitted in the Guam Police use of force rules, Plaintiff finally complied and Barcinas and Diaz secured Plaintiff in handcuffs. (See pp.2-3, Exhibit C to Torres Declaration). Since Plaintiff was injured by his resistance to arrest and requested medical attention, an ambulance was called. Plaintiff was taken to Guam Regional Medical City where he was treated and released. As part of his treatment Plaintiff's blood was tested and his alcohol level at the hospital was .094, above the legal limit for driving. (See p.59 of Plaintiff's SAC).

**A. Sovereign Immunity Bars Plaintiff's 42 U.S.C. 1983 Cause of Action.**

Subject matter jurisdiction is the Court's statutory or constitutional power to adjudicate a case. ***Pister v. Garcia***, 791 F.3d 1104, 1110 (9th Cir., 2015). Rule 12(b)(1) of the FRCP is a proper vehicle for invoking sovereign immunity from suits. ***Id.***, at 1111. Plaintiff seeks to impose Section 1983 liability upon all Defendants and seeks prospective injunctive relief against them in their official capacities. In a Rule 12(b)(1) motion to dismiss on the basis of sovereign immunity, the party asserting subject matter jurisdiction has the burden of proving its existence, i.e., that the immunity does not bar the suit. ***Id.***

The Organic Act of Guam vests the Government of Guam with sovereign immunity 48 U.S.C. §1421a (stating that the Government of Guam may be sued "with the consent of the legislature evidenced by enacted law") and ***Marx v. Gov't of Guam***, 866 F.2d 294, 298 (9th Cir., 1989) ("controlling authority and the legislative history of the Organic Act compel our holding that the Government of Guam has inherent sovereign immunity.").

Defendants agree with Plaintiff's allegation at ¶ 129 of the SAC that Guam officials

are considered a "person" for § 1983 purposes when sued in their official capacity for prospective relief. ***Paeste v. Gov't of Guam***, 798 F.3d 1228, 1235-40 (9th Cir. 2015). ***Crawford v. Antonio B. Won Pat Int'l Airport Auth.***, 917 F.3d 1081, 1089 n.8 (9th Cir. 2019). Waiver will generally exist where the state or agency either voluntarily invokes the court's jurisdiction or makes a clear declaration that it intends to submit itself to jurisdiction. ***Id.*** at 675-76. In other words, waiver will be found only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction. ***Ramsey v. Muna,*** 849 F.3d 858, 860-61 (9th Cir., 2017).

Before an officer may be subjected to suit for allegedly using excessive force, a court must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." ***District of Columbia v. Wesby***, 583 U.S. 48, 64 (2018). This requirement ensures that sovereign immunity serves its core aim: to protect public officials from the burdens of litigation and liability for conduct without notice that the conduct is unlawful. ***Hope v. Pelzer***, 536 U.S. 730, 739 (2002). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Kisela v. Hughes***, 584 U. S. 100, 104 (2018) (per curiam); see also ***Wesby***, at 62–63.

A year later the Supreme Court revisited the issue of qualified immunity in ***Escondido v. Emmons***, 586 U.S. 38 (2019). ***Emmons***, involved a qualified immunity case regarding the use of force by police officers during a domestic violence incident. The Court's decision addressed whether two police officers violated clearly established law when they forcibly apprehended a third person, not the suspected perpetrator or victim of the domestic violence, at the scene of a reported domestic violence incident. Officer Robert Craig and Sergeant Kevin Toth were involved in the arrest of Marty Emmons for misdemeanor resisting and delaying a police officer. The Ninth Circuit had remanded the excessive force claims for trial, but the Supreme Court reversed as to Sergeant Toth and vacated as to Officer Craig. The Court emphasized that an officer cannot be said to have

violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendants shoes would have understood that they were violating it. Thus, "public officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." ***Id.*** at 42.

Plaintiff asserts that his rights were violated by the officers use of excessive force. To find that a right is clearly established, courts generally "need to identify a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution. ***Emmons***, at 43. The relevant precedent must define the right with a "high degree of specificity," so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." ***Wesby***, supra at 63. Principles stated generally, such as that "an officer may not use unreasonable and excessive force," do not suffice. ***Kisela v. Hughes***, 584 U.S. 100, 105 (2018) (per curiam). In short, officers receive qualified immunity unless they could have "read" the relevant precedent beforehand and "know[ n]" that it proscribed their specific conduct. ***City and County of San Francisco v. Sheehan***, 575 U.S. 600, 616 (2015).

In this case, Plaintiff was uncooperative and Diaz radioed for back up. Plaintiff was asked many time to exit his vehicle yet he refused and physically resisted doing so. In the process of being removed from his vehicle he continued to resist and only stopped resisting after being struck with an open palm by Officer Barcinas which allowed officers to gain control of Plaintiff and effectuate an arrest. None of these facts viewed through the officers eyes at the time demonstrate a fourth amendment constitutional violation. Plaintiff presents no facts that Moving Defendants were on notice of prior case law that established their actions as unconstitutional. Plaintiff's injuries were an unfortunate result of the circumstances of his own illegal behavior. The officers' actions were not violations of Guam statutory law, GPD policy, or the United States Constitution.

**B. Zorn v. Linton**, 607 U. S. ____(2026).

On March 23, 2026, the United States Supreme Court in ***Zorn,*** supra, reinforced the high bar for overcoming qualified immunity in 42 U.S.C. 1983 excessive force cases. The


TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

Court held that police officers who issue warnings before using routine pain compliance techniques on passively resisting protesters are protected from civil liability, absent highly specific prior precedent establishing that such conduct violates the Fourth Amendment. The ruling underscores the Supreme Court's continued insistence that the qualified immunity standard requires a "high degree of specificity" in prior precedent before an officer can be denied their protection.

The case arose from a January 2015 sit-in at the Vermont state capitol, where approximately 29 protesters refused to leave the legislative chamber after the building closed for the night. Police officers warned the protesters they would be arrested for trespassing and began removing them one by one. Sergeant Jacob Zorn approached protester Shela Linton, who was seated with her arms linked to fellow protesters. Linton passively resisted Zorn's orders, so he placed her arm behind her back in a rear wristlock, repeatedly warned her to stand, and when she refused, used the wristlock to lift her to her feet. Linton alleged permanent injuries to her wrist and shoulder, as well as post-traumatic stress disorder, depression and anxiety. Zorn repeatedly warned Linton that he would have to use more force if she did not stand up, and when she did not do so, he used a wristlock to bring Linton to her feet.

Linton sued Zorn under § 1983, claiming he violated her Fourth Amendment right against the excessive use of force. The Zorn decision clarified the conflict with the Second Circuit's analysis and interpretation of ***Amnesty America v. West Hartford***, 361 F.3d 113 (2d Cir. 2004). Therein the United States District Court granted summary judgment on qualified immunity grounds, but the United States Court of Appeals for the Second Circuit reversed, holding that ***Amnesty America***, clearly established that the "gratuitous" use of a rear wristlock on a passively resisting protester constitutes excessive force.

Reaffirming the qualified immunity framework, the Supreme Court reversed and emphasized that government officials are shielded from suit unless their conduct violates "clearly established" law, meaning that "every reasonable official would have understood that what he is doing violates that right." Courts must generally identify a prior case


TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

involving an officer acting under similar circumstances who was held to have violated the Constitution, and the precedent must define the right with a "high degree of specificity."

The Supreme Court found that ***Amnesty America*** did not clearly establish that Zorn's conduct was unconstitutional. The Supreme Court concluded that reasonable officials would not interpret ***Amnesty America*** to establish that using a routine wristlock to move a resistant protester after warning her, without more, violates the Constitution. Principles stated at a general level such as "an officer may not use unreasonable and excessive force," are insufficient to overcome qualified immunity. Since Zorn warned Linton repeatedly before escalating, the 2nd Circuit's broad principle regarding "gratuitous use of pain compliance techniques" did not "obviously resolve" whether Zorn's specific actions were unlawful and the Supreme Court held that Zorn was entitled to qualified immunity.

This ruling reinforces the Supreme Court's longstanding position that qualified immunity demands more than general legal principles to hold officers liable under § 1983. The ruling continues to require highly specific factual parallels in prior precedent before concluding that an officer's conduct violates clearly established law. The significance of issuing warnings before escalating to force, as the Supreme Court emphasized that Zorn's warnings to Linton distinguished his conduct from the facts of ***Amnesty America.***

Plaintiff failed to allege conduct or cases of highly specific factual parallels by which the Defendants knew that their conduct in this instance was illegal. Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court. ***Frigard v. United States,*** 862 F.2d 201, 204 (9th Cir. 1988). In ***Frigard*** Plaintiffs sued under the Federal Tort Claims Act claiming it lost money when the CIA misrepresented information to them. In finding for the U.S. the Ninth Circuit stated, "the bar of sovereign immunity is absolute," and dismissal with prejudice is permitted. ***Id.*** This case should also be dismissed with prejudice.

**C. Additional basis for Dismissal under Federal Rules of Civil**

**Procedure (FRCP) 12(b)(6) and 56(c).**

Following the pleading requirements of ***Zorn*** and its reinforced and clarified qualified immunity defense, Defendants seek dismissal of all claims asserted against them pursuant to FRCP Rules 12(b)(1)and (6) and Rule 56(c).

Rule 56(c) of the FRCP states summary judgment is appropriate "if the *pleadings*, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact and that the moving party is entitled to a judgment as a matter of law."(emphasis added).

When analyzing a summary judgment motion, the Court of Appeals for the Ninth Circuit held that, "In assessing whether a plaintiff has stated a claim, we accept as true all well-pleaded factual allegations, and construe all factual inferences in the light most favorable to the plaintiff." ***Parents for Privacy v. Barr***, 949 F.3d 1210, 1221 (9th Cir. 2020)). The movant bears the initial burden of showing that "undisputed facts in the record support a prima facie entitlement to the relief requested." (***Hawaiian Rock Products Corp. v. Ocean Housing, Inc.***, 2016 Guam 4, ¶ 27). If such a showing is made, "the non-movant may not simply deny the allegations to create a factual dispute, but is obligated to set forth specific facts showing there is a genuine issue for trial." (***Gayle v. Hemlani***, 2000 Guam 25, ¶ 21. To be sure, a court must not resolve factual disputes on summary judgment. See ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 247-48 (1986). But "whether the conduct of which the plaintiff complains violated clearly established law" is an "essentially legal question" that courts are competent to resolve. ***Mitchell v. Forsyth***, 472 U.S. 511, 526 (1985).

In reviewing a Rule 12(b)(6) motion, the trial court must "construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor." ***First Hawaiian Bank v. Manley***, 2007 Guam 2 ¶ 9. Dismissal is appropriate only when the non-moving party "can prove no set of facts in support of his claim which would entitle him to relief. ***Vasques v. Los Angeles County.,*** 487 F.3d 1246, 1249 (9th Cir. 2007).


TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

To survive a motion to dismiss for failure to state a claim under FRCP Rule 12(b)(6), a plaintiff must assert factual allegations that suggest that the claim has at least a plausible chance of success. ***Levin v. Yelp! Inc,*** 765 F.3d 1123, 1134-35 (9th Cir., 2014). A claim has a plausible chance of success if it allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. ***Ashcroft v. Iqbal,*** 556 U.S. 662, 678 (2009). The court must draw on its judicial experience and common sense to determine the plausibility of a claim given the specific context of each case. ***Id.***, at 679. Consideration of Plaintiff's SAC as a whole demonstrates that it fails to meet the requirements established in ***Zorn*** and the FRCP. The facts are sweeping legal conclusions cast in the form of factual allegations. The allegations do not establish a plausible chance of success.

In ***Conley v. Gibson***, 355 U.S, 41 (1957) the Court stated that a case should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts imposing liability. Here Plaintiff's pleadings against Defendants amount to conclusory allegations which do not equate to the plausibility of any unlawful actions or inactions by Defendants or an illicit accord by Defendants to violate Plaintiffs fourth amendment constitutional rights. The SAC fails to present a detailed recitation of allegations that satisfy the pleading requirements to overcome Defendants qualified immunity. Thus, Plaintiff's did not plead sufficient facts or set forth claims upon which relief can be granted and Moving Defendants are entitled to Summary Judgment and/or dismissal of all claims against them.

**D. Standards for Individual Liability under 42 U.S.C. § 1983.**

Rule 12(b)(1) motions challenge "[]the Court's subject matter jurisdiction." ***Svenson v. Google Inc.,*** 65 F. Supp. 3d 717, 721 (N.D. Cal. 2014). Assuming, *arguendo*, compliance with ***Zorn***, Defendants address liability standards under 42 U.S.C. 1983. Claims of excessive force by law enforcement during an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment by an "objective reasonableness" standard. ***Graham v. O'Connor,*** 490 US 386 (1989). In ***Graham***, the excessive force claim arose in the context of an arrest or investigatory stop of a free citizen.

Such a stop invokes the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen," ***Terry v. Ohio***, 392 U. S. 1, 392 U. S. 19, n. 16 (1968); see ***Brower v. County of Inyo***, 489 U. S. 593, 489 U. S. 596 (1989).

Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. ***Terry,*** supra at. 22-27. Claims that law enforcement officers used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process analysis ...". ***Graham***, supra at 395.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ***Terry*** supra, at 20-22. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. ***Johnson v. Glick*** 481 F.2d (2d Cir. 1973) at 1033. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation. ***Graham***, supra at 396-97. Here Defendants were confronted with a combative, non-cooperative person at 1:45am. He refused even the most basic lawful request of showing his license and registration. Moving Defendants followed GPD policy for their own safety. Their use of reasonable force to effectuate the lawful arrest did not violate Plaintiff's constitutional civil rights against use of excessive force. The undisputed facts in the record do not support a prima facie entitlement to the relief requested. Plaintiff has not met his burden

under ***Pister***, supra, for establishing subject matter jurisdiction or waiver of qualified immunity.

**E. The Court Should Decline Supplemental Jurisdiction Over Plaintiff's Guam Law Claims.**

Should Moving Defendants' Motion be granted no other basis for original jurisdiction exists. Courts may exercise supplemental jurisdiction over any other remaining claims. Courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. §1367(a). Courts may decline to exercise supplemental jurisdiction over a claim if: (1) The claim raises a novel or complex issue of state law; (2) The claim substantially predominates the claim or claims over which the District Court has original jurisdiction; and (3) In exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §1367(c). A Court is required to do a 28 U.S.C. §1367(c) analysis of its supplemental jurisdiction if requested by a party. ***Acri v. Varian Associates, Inc.***, 114 F.3d 999, 1000 (9th Cir., 1997).

Plaintiff asserts claims against moving Defendants arising from Guam's Organic Act and Guam law. A review of the individual claims demonstrates that it relies upon mere legal conclusions and fails to contains detailed factual account of Defendants alleged illegal practices to set forth claims of liability. The Court need not accept bald assertions, "unsupported conclusions and opprobrious epithets" as facts, ***Ochoa Realty Corp. v. Faria***, 815 F.2d 812, 814 (1st Cir. 1987) or "footless conclusions of law" ***Ryan v. Scoggin***, 245 F.2d 54 (10th Cir. 1957), or "sweeping legal conclusions cast in the form of factual allegations", ***Blackburn v. FISK University***, 443 F.2d 121 (6th Cir. 1971), and in those circumstances they are entitled to no credence.

For example, in Count 1 (Assault), at ¶¶ 38-39 Plaintiff alleges that Defendant Diaz intentionally threatened Plaintiff and the officer intended to cause harm. In Count II (Battery), at ¶¶ 46-47 Plaintiff alleges that at least three officers intentionally pulled him

from his vehicle and beat him. In Count III (Intentional Infliction of Emotional Distress), at ¶¶ 46-47 Plaintiff alleges that at least three officers engaged in police brutality and elder abuse actions ... from their outrageous conduct." Those are footloose conclusion of law.

In Count IV (Negligence) at ¶¶ 60-61, Plaintiff alleges that all Defendants breached their duty to Plaintiff without identifying how each did so. In Count X (Fabila only-failure to Supervise), Plaintiff alleges that Defendant Fabila participated in and directed the constitutional violations inflicted upon Plaintiff. Plaintiff fails to state a claim as he alleges no facts to demonstrate that in doing his job Fabila acted as a supervisor, failed to exercise control, acquiesced or showed recklessness in his conduct at or before the arrest. (See SAC at ¶¶135-138). Should this Court find no Fourth Amendment violation this Count cannot stand.

In Count XI (Conversion against all Defendants) at (SAC at ¶¶ 142-144), Plaintiff alleges that Defendants stole $2,000.00 from his wallet while in police custody. Plaintiff filed a complaint with GPD and a Claim Against the Government ("CAG") for $2,000.00 for conversion (SAC at pp. 27 and 32). GPD conducted an internal affairs investigation and the conclusion was no wrongdoing or discipline issued against the officers. The CAG falls within the defense of Sovereign or Qualified Immunity that protects government employees from personal liability for actions performed in their official capacity, unless a clearly established constitutional right was violated.

In Count XII ("Attorneys Fees against all individual Defendants). This claim is tied to constitutional violations and if this Court finds that there were no fourth amendment violations this claim must be dismissed.

Guam has not waived sovereign immunity for its officers acting within the scope of their duties. Plaintiff makes no such contrary allegations in his SAC nor does he point to knowledge by Defendants of any authority making it clear that Defendants engaged in excessive force. Furthermore, review of the entire SAC demonstrates that it relies upon general statements of liability, mere legal conclusions and fails to contain detailed factual accounts of Defendants alleged unlawful behavior towards Plaintiff. In summary, the

Court may only exercise supplemental jurisdiction over claims arising under state law "that are so related to" the federal claim "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). If the Court dismisses the federal claim, it may, and generally should, decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); see also ***Carnegie Mellon Univ. v. Cohill***, 484 U.S. 343, 350 n.7 (1988). There is nothing unique or intertwined with Plaintiffs civil rights claims that urge the Court to exercise supplemental jurisdiction. The Court should decline to exercise supplemental jurisdiction over the Guam law claims.

## CONCLUSION

Plaintiff's SAC fails to establish with specificity 42 U.S.C. 1983 jurisdiction or that Defendants are not entitled to qualified immunity. Analysis of the SAC demonstrates that it fails to contain essential detailed factual accounts as required by ***Zorn***, supra. The Court should find that it lacks subject matter jurisdiction over the Plaintiff's Section 1983 claims, deny Plaintiff's Guam law causes of action and dismiss them with prejudice. In that instance dismissal would also apply to Defendants Patrick G. Corpuz and Donald Flickinger. Additionally, Defendants are entitled to their costs and attorneys fees for defending this matter in accordance with 42 U.S.C. §2000e-5(k). Individual Defendants request the Court award such costs and attorney fees to them and that the Court order the Plaintiff to pay the same to the individual Defendants.

Pursuant to the arguments set forth above, Defendants respectfully request that Defendants be granted summary judgment and Plaintiff's SAC be dismissed, with prejudice.

***Respectfully submitted*** this 26th day of June, 2026.

**TORRES LAW GROUP**

/s/

By______________________________

**PHILLIP TORRES, ESQ.**
*Attorneys for Defendants Kendall J.N. Diaz, Aren L. Fabila, John W. Barcinas Patrick G. Corpuz and Donald Flickinger*



TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891