# GUAM POLICE DEPARTMENT
# HAGÅTÑA, GUAM

**VOL. V-A**

| General Order | Date of Issue: 03/08/11 | Effective: 03/08/11 | No. 11-03 |
|---|---|---|---|
| Reference: | | Rescinds: | |

**Subject:** **USE OF FORCE AND DEADLY FORCE**

**Purpose:** **To establish a policy in the use of Force and Deadly Force**

**THIS ORDER CONSISTS OF THE FOLLOWING NUMBERED SECTIONS:**


I. POLICY

II. DEFINITIONS

III. PROCEDURES


## I. POLICY

Human life is sacred. Protecting innocent human life is the most important mission of Guam Police Department. Apprehending non-violent suspects and criminals is less important than protecting innocent human life, including the protection of the officer's own life.

Officers maintain a readiness and ability to act in instances where, in *their perception*, the use of force or deadly force may be appropriate. By maintaining readiness and a capacity to employ a variety of skill sets officers may reduce the likelihood of opposition and of the actual need for a forceful response. . While *officer discretion* is critical, the need to balance applications of force against accountability is essential. Officers only use the amount of force reasonably necessary to protect life and enforce the law under guidelines established by the Constitution of the United States, the Organic Act of Guam, established local and federal law, and as articulated in this General Order.

## II. DEFINITIONS

A. ***Authorized weapon*** - A weapon approved by Guam Police Department and sanctioned for use by its department employee to be uniformed personnel, detention officers and CVPR when exercising police authority. No weapon is authorized for carry or use unless the agency expressly approves it and the uniformed personnel department employee to be uniformed personnel, detention officer and CVPR when exercising police authority has demonstrated proficiency with the weapon type in accordance with agency guidelines.

B. ***Auxiliary weapons of availability*** - An employee may become separated from their agency issued firearm or other authorized weapons. Should this occur, the employee might have access to a *weapon of opportunity*, including but not limited to a flash light, citation holder, handcuffs, tools, lumber, or any object that could be used as a weapon in the defense of self or another

C. ***Baton or expandable baton*** - An impact weapon capable of inflicting bodily injury by striking with a portion of the weapon. Only batons authorized by the agency are carried or used. Carrying or using saps, *Billy clubs*, or *slapjacks* is prohibited.

D. ***Chemical weapon*** - **Weapons** capable of temporarily incapacitating a person through the controlled release of some chemical irritant or agent.

E. ***Certification with weapon - Officer*** has demonstrated proficiency with a particular weapon, and is tested in its safe care and use. The officer is thereby authorized to carry and use this weapon in the performance of his/her official duties regardless of whether the officer is on-duty or off-duty. Without such certification, the officer may not carry or use this or a similar weapon.

F. ***Deadly force*** - Action, with or without the use of a weapon, intended to cause death or serious bodily injury; or, the use of any object in a manner intended to cause death or serious bodily injury

G. ***Electronic Control Device [ECD]*** – A non-deadly or defense weapon designed to stop an attack; subdue fleeing, belligerent, or potentially dangerous subjects; or stop a perceived threat of suicide or self inflicted injury. The device used may be hand-held, shoulder fired munitions, or a hand discharged device. In most configurations such devices are an electroshock weapon that uses electrical current to disrupt voluntary control of muscles. Sometimes called an *electronic stun device* in general. Also often referred to as a TASER™ due to this manufacturer's high profile presence in the market

H. ***Exigent circumstances*** - Conditions that are of such urgency and seriousness as to justify a warrantless entry, search, or seizure by officers.

I. ***Firearm*** - Any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases or any device readily convertible to that use; including all handguns, rifles, and shotguns.

J. ***Force or non-deadly force***- *Actions* not calculated under the circumstances to cause death or serious bodily injury.

K. ***Knife*** - Any edged weapon that is designed to inflict serious bodily injury or death by stabbing, cutting, slicing, whether legal or illegal, and including swords, daggers, axes, hatchets, etc.

L. ***Lateral vascular neck restraint [LVNR]*** - A method or manner of restraining or controlling a person by physically restraining the person's neck from behind. The technique involves the initial restraint of a person through contact and control methods which may ultimately be used to incapacitate the person by rendering the person temporarily unconscious where the person refuses to submit to lesser levels of control.

M. ***Non-deadly force*** - Procedures or weapons designed to provide *force*, but force not intended to kill. The *non-deadly* force concept is also commonly referred to as *less than deadly*, or *less than lethal* force. Regardless of the application name, reasonable officers know that – although unlikely – any force, especially when applied under, *tense, uncertain, and rapidly evolving situations*, may cause injury, or death, despite the best intentions of the officer.

N. ***Physical strength and skill*** - Any physical actions by one or more officers (e.g., holding, restraining, pushing, and pulling) which may include special skills (e.g., boxing, karate, and judo) but do not include the use of *deadly force* or any weapon.

O. ***Probable cause*** - Sufficient reason, based upon known facts, to believe a crime has been committed or that certain property is connected with a crime. Probable cause must exist for a law enforcement officer to make an arrest without a warrant, search without a warrant, or seize property in the belief the items were evidence of a crime. *Probable cause* is often subjective, but if the officer's belief or even hunch was correct, finding stolen goods, the hidden weapon, or drugs may be claimed as self-fulfilling proof of probable cause. Technically, probable cause has to exist prior to arrest, search, or seizure.

P. ***Serious bodily injury*** - Harm that creates substantial risk of death, serious permanent disfigurement, or loss or impairment of any body function or organ.

## III. PROCEDURES

### A. Levels of Use of Force:

Use of force or deadly force is controlled by the basic elements of a *reasonable officer's perception* and a *reasonable officer's response*. Officers may use only the level of force that is reasonably necessary to stop the perceived threat.

To better understand and explain *use of force* and force issues, officer *perceptions* and officer *force options* are illustrated in the *Use of Force Continuum* or *force continuum* that is located on the last page of this policy. This chart illustrates five levels of *perception* and five corresponding levels of *response*. Officers must be familiar with, and know how to apply and explain this *continuum*. Refer to the Use of Force Continuum, at the end of this policy.

Officer's general perception and corresponding force options are:

1. **Level 1 – (Compliant)** The suspect is *perceived* by the officer to be *compliant*. The appropriate level of response is *cooperative controls*, including *officer presence, hand signals, verbal commands and instructions, light touching* or *patting*, etc. In other words cooperation at this level is a *two way street*.

2. **Level 2 – (Passively Resistant)** The suspect is *perceived* by the officer to be passively *resistant*. *The* appropriate level of response is *contact controls*, including *strong or forceful soft hand, hand and arm-holds, pressured physical movement of the suspect, removal*, etc.

3. **Level 3 – (Actively Resistant)** The suspect is *perceived* by the officer to be *actively resistant*. *The* appropriate response is *compliance techniques*. This is the threshold for any reasonable officer to consider this suspect to be a potential violent threat to himself, officers, or others. Compliance techniques may include *all reasonable* means to cause the *suspect to comply as soon as reasonably possible*. These techniques may include *use of chemical weapons, use of restraints, forced movement, forcing a suspect's limbs behind his back, forcing a suspect down on the floor or against a wall, Lateral Vascular Neck Restraint(LVNR)* [if the officer is trained and has demonstrated proficiency in its use] *or using other forms of rough physical force*, etc. Once suspects are perceived as actively *resistant*, officers should not relax care until the subject is fully secured.

4. **Level 4 – (Assaultive & A Threat to Bodily Harm)** The suspect is *perceived* by the officer to be assaultive – *and a threat to bodily*

*harm.* The appropriate level of response is immediate *defensive tactics*. The original assaultive behavior may have been directed at a fellow suspect, apparent victim, or the officer. *Defensive tactics* may include *impact weapons, hard fist, electronic control devices, or any other reasonable means available* and at hand to stop the aggression, defend against the attack, or bring the suspect into compliance. It is contemplated and understood that reasonable officers, while employing defensive tactics, may cause injury, serious injury, and in some isolated instances, death without intending such consequences.

5. **Level 5 – (Assaultive & Serious Threat of Bodily Harm or Death)** The suspect is *perceived* by the officer to be *assaultive – serious bodily harm or death*. The appropriate level of response is *deadly force*. Deadly force includes firearms, knives, or any other means immediately available that a reasonable officer, in the same circumstance, would consider as potentially causing death or serious bodily injury.

**B. Tactics, Applications, & Officer's Perceptions:**

1. **Level 1 – (Compliant) No or Slight Apparent Potential for Harm**

   a. **Arrival & Presence:** Officer present at the scene. This includes proper voice and/or other identification, body language, and awareness by the subject that he is dealing with an officer of the law. This may also include presence of the officer's vehicle, seeing the officer in his uniform, hearing officer identification, etc. A reasoning person seeing and hearing these things normally alter their behavior, and respond to the officers instructions.

   b. **Interview Stance:** The officer adopts a stance outside his danger zone that provides appropriate protection and forms the basis of an effective physical response if attacked.

2. **Level 2 – (Passively Resistant) Moderate Potential for Physical Harm**

   a. **Dialogue Between Parties:** A two way, controlled, non-emotional communications between the officer and the subject, aimed at a problem identification and/or resolution.

b. **Verbal Direction:** Officer asks, advises, or commands subject to engage in, or refrain from, a specific action or non-action.

c. **Soft Hand Techniques:** Officer may choose to employ some assistance in movement, compliance, or removal from the immediate scene.

3. **Level 3 – (Actively Resistant) Moderate Potential for Physical Harm**

a. **Restraint Devices:** Mechanical tools used to restrict a subject's movement and facilitate searching such as, handcuffs, flex cuffs, leg irons, belly chains, optional nylon restraining devices etc.

b. **Chemical Agents Individual Protection Devices:** CS/OC spray agent used to subdue or bring a subject into compliance.

c. **Transporters:** Techniques used to control and/or move a subject from point A to point B with the minimum effort by the officer or to gain and retain control over the subject.

d. **Takedown:** Techniques that redirect a subject to the ground in a controlled manner to limit physical resistance and to facilitate the application of a restraint device, and to prevent intentional injury to the subject.

e. **Pain Compliance:** Techniques designed to force a subject to comply with an officer, as a result of the officer inflicting controlled pain upon specific points in the subject's body such as pressure point techniques.

4. **Level 4 – (Assaultive & A Threat to Bodily Harm) Serious Potential for Physical Harm**

a. **Electronic Control Device:** Is a Level 4 application of force, when properly employed. Such devices are not be used on persons known to have implanted medical devices such as pace makers or time medical dispensing mechanisms.

b. **Incapacitation:** Techniques intended to stun or render a subject temporarily unconscious. These techniques may be an impact weapon, such as a strike to a major nerve area, or lateral vascular neck restraint.

c. **Intermediate Weapon:** Impact weapons that are primarily used to control a subject such as a baton, expandable baton, Taser®, and/or agency canine.

d. **Lateral Vascular Neck Restraint:** Should only be applied when other take-down and restraint procedures have failed. As with other Level 4 devices and techniques, only officers trained and practiced in the technique should attempt to apply it.

5. **Level 5 – (Assaultive & Serious Threat of Bodily Harm or Death) High Potential for Great Bodily Harm or Death**

   1. **Deadly Force:** Techniques and implements that by their very nature are known to cause death or serious injury. To employ deadly force officers must perceive that an imminent threat to their life or the life of another is present.
   2. **Firearm Special Munitions:** Special munitions fired, launched, or discharged from a service handgun, shoulder weapon, or vehicle mounted weapon constitute a <u>Level 5</u> application of the use of force, and is used with extreme care. Although often referred to as *less-lethal*, officers know that the *less* refers to *less chance of causing death or serious bodily injury*. Special munitions rounds must not be deliberately fired or thrown at the face, chest, neck, or spine of any individual. For more information on special munitions, refer to General Order 05.03 Special Munitions – Distraction Devices, & 05.04 Special Munitions – Less Lethal.

It is important to remember that almost all incidents faced by officers are not scripted, easy to understand, or predictable as to outcome. Officers use their best effort to determine the threat level and apply the corresponding response. Time permitting, officers must use care in evaluating a suspect's actions and perceived threat level. If there is reasonable doubt and time permits, seek assistance before acting. Justification for the use of force and deadly force must be limited to what is *known or reasonably perceived* by the officer at the time of the incident. Facts unknown at the time force is used should not be considered later to determine whether the force was justified.

Officers may not intentionally use more force than is necessary and reasonable under the circumstances. Officers may never use force in response to mere verbal provocation or abusive language directed at the officer. Officers must never use deadly force, except to protect his/her life, or the life of other human being.

response to mere verbal provocation or abusive language directed at the officer. Officers must never use deadly force, except to protect his/her life, or the life of other human being.

3. **Application of Use of Force & Deadly Force:**
   Application of *deadly force* and *force* are authorized by a peace officer only to achieve the following lawful objectives to:

   a. Defend self, or others against serious threats of serious bodily injury or death,

   b. Stop dangerous felony flight, where there is serious imminent risk to the public of death or serious bodily injury;

   c. Stop imminent damage to or theft of property, which by its removal or damage seriously threatens the life or safety of others.

   Only when there is a reasonable expectation that altered or damaged property may place others in imminent risk of death or serious bodily injury is the application of *deadly force* appropriate to protect property. Some examples of the use of deadly force to protect property are stopping a suspect from setting a fire, or throwing a bomb; preventing serious damage to a bridge; stopping sabotage to commercial airfields; or deterring the use or theft of what appears to be a weapon of mass destruction, bomb, or other military equipment.

   Application of *force* but not *deadly force* is authorized by a peace officer only to achieve the following lawful objectives to:

1. Preserve the peace;
2. Defend themselves, or others against unlawful violence;
3. Prevent the commission of self-inflicted injury or suicide by any person;
4. Make lawful arrests or searches; to overcome resistance to such arrests or searches; and to prevent escape from custody,
5. Prevent or interrupt an intrusion on, or interference

6. Prevent roaming at large by obviously mad or vicious animals, or to relieve animals so badly injured that it cannot reasonably survive from injuries causing prolonged suffering.

Before using any physical force against a suspect, beyond Level I officers must:

1. Have *probable cause* to arrest that suspect;
2. State his intentions to arrest, and identify himself as a police officer; &
3. State the reason for the arrest.

Amount and degree of force officers may use to achieve an objective takes into consideration the following issues:

1. Nature and seriousness of the offenses committed by the suspect;
2. Threat posed to other persons or the general public if the suspect's behavior continues;
3. Nature and seriousness of the risk of injury to the officer or others;
4. Age, physical condition, and behavior of the suspect;
5. Relevant actions by any third parties:
6. Physical conditions (e.g., visibility) at the scene:
7. Feasibility and availability of alternative actions: &
8. Opportunity and actual ability of the suspect to injure the officer, himself, or others.

Before officers use force (but not *deadly force*) when protecting a person from self-inflicted bodily injury [suicide attempt] or from uncontrollable circumstances, the officer must consider other available alternatives to protect that person from harm.

Officers may use unauthorized objects as weapons, or use weapons in unauthorized manners if emergency circumstances make it necessary to protect human life and prevent serious injury.

Officers may draw and ready any authorized weapons for use only when they reasonably anticipate that they may have to use such weapon(s). This does not require officers to use the weapons.

**6. Use of Non-Deadly Force:**

Officers use physical strength and skill, restraint devices,

chemical weapons, electronic weapons, or impact weapons to apply non-deadly force only.

Officers have no obligation to *retreat* or *back down* before resorting to approved use of force, including deadly force. Officers may consider retreat or withdrawal where delay could make a more peaceable arrest, or stop, likely if such tactics would not increase risk to self or others. In some cases, an increased show of force may reduce the amount of force necessary to accomplish the officer's objective.

Officers may not attempt to affect arrests alone if there is substantial risk to self from the arrestee or another party unless there are no available reasonable alternatives.

Officers use handcuffs or other restraining devices on all arrestees unless it is obviously unnecessary or impractical (e.g. the elderly, young juveniles, amputees, crippled, injured, or other applicable subjects). Officers must take reasonable precautions to protect arrestees from injury caused by handcuffs or other restraining devices. Only restraining devices and techniques approved by the agency may be used.

Officers may use chemical weapons for self-protection, or to subdue a person unlawfully resisting arrest. Any person upon whom a chemical weapon has been used must be treated or decontaminated for exposure to the chemical agent as soon as practical and thereafter monitored for possible latent effects.

Officers may use approved electronic weapons in accordance with this policy. An electronic weapon is only be used to protect persons from assault or to subdue persons unlawfully resisting arrest.

Lateral Vascular Neck Restraints [LVNR] may only be used by officers to restrain a person if the officer is trained in the proper techniques of applying and using LVNR and the officer has periodically demonstrated a proficiency in the use of such techniques. Officers do not use a choke hold as a method of controlling or restraining a person.

Officers may use impact weapons to protect self-or another from assault or to arrest a person who unlawfully and violently resists arrest if lesser methods have failed, or if circumstances warrant the immediate use of the baton. However, officers should:

a. Avoid baton blows that are capable of inflicting serious bodily injury;

b. Not raise the baton above the head to strike someone or use the baton as a club or bludgeon;
c. Deliver only short snappy body blows to vulnerable areas in order to temporarily incapacitate subjects; &
d. Not deliberately strike the *face, head, neck, collarbone, spine, kidney area, solar plexus, knees*, or *elbows*.

Officers not trained and currently certified with impact weapons are not authorized to use flashlights or other similar devices as substitutes, except in extreme life-threatening emergencies.

7. **Use of Deadly Force:**
Deadly force may not be used under the following circumstances:

a. As a warning or threat;
b. With the intent to maim or cripple a person;
c. On a person who has not caused or threatened to cause serious bodily injury or death to another person, including the officer;
d. On a person who simply flees or evades arrest;
e. At or from a moving vehicle, except in *exigent circumstances*, and only in an attempt to save human life, or protect the public;
f. Merely to prevent the destruction or theft of property; or
g. When the officer has any doubt as to the justification for using deadly force.

8. **Reporting Use of Force Incidents:**
Officers, who discharge a firearm, use chemical weapons, electronic weapons, impact weapons, special weapons, knives, or who were involved in a bodily injury to themselves or other persons by use of force or deadly force must notify their direct supervisor immediately.

Officers are required to complete a written report detailing the circumstances surrounding the use of force incident. This written use of force report requirement must be met even though other required reports may have already covered the situation.

In incidents where officers cause serious bodily injury or death through the application of deadly force:
**1.)** Call for medics
**2.)** Notify their direct supervisor and back-up.
**3.)** Render First Aid to the victim(s).

In incidents involving the use of force, all officers assist in every way possible with the investigation. Any report required by this policy receives executive review in an effort to:

a. Protect the integrity of the facts and the evidence;
b. Ensure that the officer's use of force complied with all appropriate state and federal laws, and agency policy;
c. Determine if the officer's use of force indicates a need for special counseling, training, or disciplinary action;
d. Determine whether the situation requires further action; &
e. Evaluate the need for additional or future, training.

8. **Reporting Requirements:**
The Chief of Police is notified immediately when any type of deadly force is used and there are resulting *serious physical injuries or death*.

Each officer who witnessed the incident or responded to the scene must complete a written report. These witness reports must be completed no later than the conclusion of the shift in which the incident occurred and filed with the Guam Police Department.

Officer(s) who actually used or employed the deadly force are *relieved of duty with pay* at the scene, and follow-up action handled in accordance post-shooting procedures. For more information on reporting issue refer to General Order *04.22 Post-Shooting Incident*.

Reports completed by the officers using force, other officers or witnesses include the following:

a. Description of the events leading to the use of force or deadly force;
b. Original offense or *probable cause* for the stop or action;
c. Accurate description of the incident and reasons for employing force;
d. Description of the weapon or device used and the manner in which it was used;
e. Description of the injuries suffered, and the treatment given or received;
f. List of all participants and witnesses to the incident; &
g. Copy of all incident reports compiled because of the incident.

The Chief of Police formalizes criteria for reporting incidents. Reports of all injuries are filed in the Records and Identification Section and the employee's personnel record.

9. **Allegations Against Agency Personnel:**
The Guam Police Department, Internal Affairs Unit, investigates all allegations of improper use of force & deadly force, after notifying the Chief of Police. In cases where possible criminal acts are involved, the Criminal Investigation Division and Office of the Attorney General are notified.

**FRED E. BORDALLO**
Chief of Police

notified.

FRED E. BORDALLO
Chief of Police


Use of Force
Reasonable Officer's Perception
Reasonable Officer's Response
Assaultive Serious Bodily Harm/Death
Deadly Force
RED
Assaultive (Bodily Harm)
Defensive Tactics
Orange
Resistant (Active)
Compliance Techniques
Resistant (Passive)
Contact Controls
Compliant
Cooperative Controls
Blue
5
4
3
2
1
Officer Enforcement Options