GUAM POLICE DEPARTMENT

AGANA, GUAM

VOLUME V-A

| GENERAL ORDER: | Date of Issue: 03/11/97 | Effective: 03/11/97 | No. 97-03 |
|---|---|---|---|
| Reference: Commission on Accreditation for Law Enforcement Agencies (CALEA) Standards Section 1.3. | | Rescinds: G.O. 92-22 | |

**SUBJECT:** Use of Force

**PURPOSE:** To establish departmental guidelines and standards for the use of force by all sworn police officers of the Guam Police Department.

**THIS ORDER CONSISTS OF THE FOLLOWING NUMBERED SECTIONS:**

I. POLICY

II. USE OF DEADLY FORCE IN DEFENSE OF HUMAN LIFE

III. FLEEING FELON -- NOT AN EXCEPTION

IV. PRECONDITION TO CARRYING FIREARMS

V. RESTRICTION ON THE USE OF FIREARMS

VI. CARRYING OF FIREARMS AND AMMUNITION WHILE OFF DUTY

VII. USE OF NON-LETHAL WEAPONS

VIII. USE OF PRIVATELY OWNED FIREARMS ON OFFICIAL DUTY

IX. SUBMISSION OF WRITTEN REPORT UPON DISCHARGE OF FIREARM

X. PROFICIENCY REQUIRED FOR AUTHORIZED SPECIAL WEAPONS

XI. FIREARM QUALIFICATION

XII. AUTHORIZED WEAPONS AND AMMUNITION

XIII. MONTHLY INSPECTIONS

XIV. USE OF FORCE REPORTING

XV. REVIEW PROCEDURE FOR USE OF FORCE INCIDENT INVOLVING SERIOUS BODILY INJURY OR THE USE OF A FIREARM

XVI. CHIEF'S REVIEW OF USE OF FORCE INCIDENT

XVII. RELIEF FROM DUTY

## I. POLICY

A. This policy provides basic guidelines governing the use of force so that officers can be confident in exercising judgement as to its application. The policy will be viewed as an administrative guide for decision-making before the fact and violations of this policy will only form the basis for departmental sanctions. The standards established by this policy may be more exacting than the standards applicable in civil or criminal proceedings. These standards are not for use by courts to establish civil or criminal liability, but shall be limited to the uses set out above.

B. While the use of force may be necessary in situations which cannot be otherwise controlled, the use of force by officers shall, whenever possible, be progressive in nature. Officers shall use only the force necessary to achieve lawful objectives.

C. Escalation of the Use of Force - The escalation of the use of force is based on resistance. When the use of force is necessary, the degree of force that is employed should be in direct relationship to the amount of resistance employed by the person or the immediate threat the person poses to the officer.

1. Verbal Force/Communication - Verbal commands must be given to direct and let the subject know what you expect of him. When effecting arrest, the subject should know by what authority you have to act and what the subject must do to comply. Verbal Force may be in the form of persuasion, advice, warnings, or orders. Volume and tone control in and of itself may be progressive in nature.

2. Unarmed Tactics - This involves actual physical contact when the subject used passive resistance or the subject needs prompting to comply by physical means. The use of pain compliance holds, escort position or pressure point control tactics could be methods used.

3. Use of Non-Lethal Weapon - This involves the use of impact weapons or aerosol irritant projectors to control persons who become aggressive or provide active or aggressive physical resistance.

4. Use of Deadly Force - When a subject attacks with a weapon or with the intent to do serious physical injury, it may be necessary to use deadly force as described in Section II.

## II. USE OF DEADLY FORCE IN DEFENSE OF HUMAN LIFE

The use of deadly force is authorized only when an officer reasonably believes that it is necessary to protect himself or others from an immediate threat of death or serious bodily harm.

A. "Reasonable belief" means the facts or circumstances the officer knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

B. "Serious physical injury"means a bodily injury that creates a substantial risk of death; causes serious, permanent disfigurement; or results in long-term loss or impairment of the functioning of any bodily member or organ.

## III. FLEEING FELON--NOT AN EXCEPTION

Deadly force may be used to apprehend a fleeing felon (a person who an officer has reasonable cause to believe has committed a violent felony and is fleeing from the officer) only if the requirements of Section II above, are met.

## IV. PRECONDITION TO CARRYING FIREARMS

All sworn personnel of this Department will be issued copies of this order and will be instructed in the policies governing the use of force prior to being authorized to carry a firearm.

## V. RESTRICTIONS ON THE USE OF FIREARMS

A. Verbal Warning - When officers are about to invoke the use of deadly force, they will, when possible or practicable, issue a verbal warning to the suspect in which officers will identify themselves as police officers and instruct the suspect to cease whatever action the suspect is doing that has caused the officer to consider the use of deadly force.

B. Shoot to Stop - An officer does not shoot to kill, but rather to incapacitate or stop an assailant from completing a potentially deadly act as described in this order. For maximum stopping effectiveness and minimal danger to innocent bystanders, officers should shoot at "center body mass".

C. Warning shots - Officers may not discharge their weapons for the purpose of a warning shot.

D. Risk to General Public - When officers are about to discharge their firearms, they will be cognizant of their field of fire and will not unnecessarily create a substantial risk of harm to innocent persons.

E. At or From Moving Vehicles - Firing from moving vehicles is prohibited and firing at moving vehicles is generally prohibited. Experience shows such actions are rarely effective and are extremely hazardous to innocent persons.

F. Under the Influence of Medication - Officers may not use or carry any firearm or dangerous ordinance while under the influence of prescription

medication. If an officer is directed to assume duty while taking medication, the officer shall inform his supervisor who shall remove the officer from duties which require the carrying of arms and assign the officer to appropriate duties or secure the officer from duty if necessary.

G. Unattended Firearms - At any time that a police officer leaves a weapon unattended, it shall be his/her responsibility to ensure that the weapon is secured in a locked place such as in the locked compartment or trunk of their vehicles, locked private residence, etc. Officers will secure and store weapons both on and off duty in such a way as to ensure no unauthorized person will have access to or gain control over the weapon.

H. Retention of Firearms - Officers should not surrender their firearms to any person except to other law enforcement personnel executing official duties.

I. Drawing or Exhibiting Firearms - An officer shall not draw or exhibit his firearm unless the officer reasonably believes that a threat of deadly force is present.

J. Handling of Firearms - There is no such thing as an Accidental Discharge; only negligent ones. GPD teaches eight (8) rules for weapons handling (adopted from the F.B.I. Academy):

1. Every firearm is always loaded.
2. Never extract the firearm from the holster unless you intend to use it.
3. Remove the magazine just before you extract the weapon from the holster to be secured or cleaned. Insert the magazine only when the weapon is in the holster.
4. Carry the weapon at raised position, slide locked to the rear.
5. Clearance of the weapon is conducted at a designated site. Never clear a weapon inside a building.
6. Never let the muzzle cover anything you are not willing to destroy.
7. Keep your finger off the trigger until your sights are on the target.

8. Always be sure of your target.

K. Holding Firearms on Suspects

1. When holding a firearm on a suspect where an officer is not yet justified in shooting, the officer should hold the firearm in the "high-ready position", a firearm ready stance where the weapon is pointed approximately at the suspect's groin without the weapon so high that it obscures the suspect's hands or belt line and the trigger finger is outside the trigger guard. If the decision to shoot is made, the trigger finger is placed on the trigger as the weapon's sights are raised to center mass.

2. If carried in the holster in the "on-safe" position, manual safeties of double-action semi-automatic pistols should normally be disengaged when the weapon is drawn. Manual safeties of single-action pistols (Colt, Browning, etc.,) should not be disengaged, and cocking levers on squeeze-cocking pistols (H&K) should not be depressed, until the decision to shoot is made.

## VI. CARRYING OF FIREARMS AND AMMUNITION WHILE OFF DUTY

While off duty, officers are authorized to carry department-issued handguns, approved ammunition and/or privately owned firearms registered and approved for official duty use for the individual officer. Officers are encouraged to carry authorized firearms when they are off duty in public places. Officers shall not carry firearms if they are under the influence of alcohol or drugs.

## VII. USE OF NON-LETHAL WEAPONS

A. Justification - An officer is justified in using non-lethal weapons to gain compliance with a lawful order when:

1. The use of lesser means has failed or clearly would not be effective; and,

2. The force used is not more than is required to gain compliance.

B. Authorized Non-Lethal Weapons

1. The following items are non-lethal weapons authorized for use on duty by officers:

   a. Straight Baton

   b. PR-24 Baton

   c. Aerosol Chemical Projector (CN, or CS - Standard/OC - Optional)

2. Officers shall not carry such non-lethal weapons until they have undergone a departmental certification course and have demonstrated proficiency in their use.

C. Specialized Non-Lethal Weapons

1. Specialized non-lethal weapons such as tear gas and incendiary devices will be maintained by the Special Weapons and Tactic (SWAT) personnel.

2. Only authorized/trained members of SWAT may use this equipment.

3. Such equipment will be utilized under the direction of the SWAT Commander or his designee.

D. Prohibited Weapons

Officers shall not carry or use any non-lethal weapon not included in this order unless expressly approved in writing by the Chief of Police.

E. First Aid Required

It is the responsibility of the arresting officer to ensure that first aid procedures are administered to subjects when there is application of non-lethal weapons.

## VIII. USE OF PRIVATELY OWNED FIREARMS ON OFFICIAL DUTY

A. Only privately-owned firearms approved by the Chief of Police and inspected by and registered with the Armory, are authorized for use on official duty.

Privately-owned firearms may be registered by completing a "Request for Use of Privately Owned Firearms on Official Duty" form (available at the Armory) and submitting it through channels to the Chief of Police. Completion of the form requires an inspection and demonstrated proficiency with the weapon. (See Attachment).

B. Use of privately owned firearm for official duty is subject to the same rules and regulations as that of government issued weapons and must be of the same specifications as those identified in Section XII of this order. At the discretion of the Chief of Police, firearms of calibers other than those listed may be approved for official use.

## IX. SUBMISSION OF WRITTEN REPORT UPON DISCHARGE OF FIREARM

A. A written report shall be submitted and forwarded through channels to the Chief of Police whenever an employee discharges a firearm, other than in routine firearms training or for recreational purposes. The report should set forth all circumstances surrounding the incident. If the facts of an incident support a conclusion that the shot was the result of negligence, the officer will be required to undergo firearms certification training again.

B. The employee discharging the firearm shall be responsible for completing the report, which must be submitted within the first working day immediately following the incident. If the employee is unable to do so, then the immediate supervisor of the employee is responsible to ensure the report is completed.

## X. PROFICIENCY REQUIRED FOR AUTHORIZED SPECIAL FIREARMS

It shall be the responsibility of the concerned division, section unit supervisor to insure that submachine guns, rifles, and shotguns are issued only for tactical use or during special operations and only to personnel proficient in the use of these weapons. Submachine guns, rifles and shotguns shall be stored at their

designated security booth at the end of each operation or tour of duty.

## XI. FIREARM QUALIFICATION

A. Annual Qualification - Officers are required to qualify annually on a course administered by the Armory, with every firearm they are authorized to carry or use. Included are duty sidearms, shotguns, specialized weapons, off-duty and secondary weapons. Officers qualifying with privately owned firearms will furnish their own ammunition for the requalification.

B. Inspection and Forms

1. All firearms will be inspected prior to qualifying.

2. If the weapon is found to be unsafe for firing, it will be turned in to the Armory/Range Master if it is a Department weapon, or removed from service until repaired, if it is personal property.

3. Firearms qualification forms will be filled out and signed by all department personnel.

4. Copies of the completed qualification forms will be maintained at the Armory.

5. A written report of qualification will be submitted to the Chief of Police by the Armory/Range Master.

C. Certifying Officer/Range Master - The Certifying Officer/Range Master must be certified through the Department of Defense or an accredited certifying agency.

D. Course of Fire and Scoring - The course of fire, scoring and minimum passing score for each class of authorized weapon shall be determined by the Armory Unit as approved in writing by the Chief of Police.

## XII. AUTHORIZED WEAPONS AND AMMUNITION

Only weapons and ammunition meeting the following specifications may be used by sworn personnel in the performance of duty:

A. Primary Duty Weapon - The 9mm semi-automatic pistol is the Department's primary duty sidearm and will be carried on duty by all sworn personnel.

EXCEPTION: Commanding officers of plain clothes personnel and personnel performing administrative duties may authorize the use of a privately-owned handgun in compliance with the specifications of Section C.

B. Backup Firearms are permitted to be carried by officers. However, if it is a privately-owned firearm, it must be authorized in the same manner as any other privately-owned weapon authorized for official police duty.

C. Firearms Specifications

1. Caliber:

a) Pistols
9mm
10mm (privately owned only)
.38/.357 caliber
.380 caliber
.40 caliber (privately owned only)
.45 caliber

b) Rifles/Carbines/Submachine guns
9mm
.223 caliber
.308 caliber

c) Shotguns
12 gauge

2. Barrel Length:

a) Pistols
Four (4) inches minimum for patrol use.
Two (2) inches minimum for concealed carry or for personnel performing administrative duties.

b) Rifles
16-22 inches

c) Submachine guns
3 - 16 inches

d) Shotguns
18 -22 inches

3. Finish:

Blued, Chrome, Stainless Steel, or Dark Matte Finish.

D. Ammunition

1. All ammunition must be safe, factory loaded and in good condition. Use of "wad cutter" or "reloaded" ammunition for official duty is prohibited.

   a) Handgun ammunition shall be of a type approved by the Department Armorer.

   b) Shotgun ammunition shall be either slugs or 00 buck.

2. Detectives and other plainclothes officers shall carry at least twelve (12) rounds of ammunition for revolvers or one extra magazine of ammunition for semi-automatics.

3. Officers not issued firearms, but authorized to use privately owned handguns on duty will be issued ammunition that is generally in stock at the Armory Unit.

4. Ammunition shall be turned in for exchange six (6) months from the date of issue, or sooner if the ammunition has deteriorated. The Armory shall store turned in ammunition for target practice.

5. Personnel are not precluded from buying their own factory-loaded ammunition and using it on duty, but such ammunition must be on the approved listing published by the armory, meet departmental specifications and not exceed its safe life expectancy.

## XIII. MONTHLY INSPECTIONS

It shall be the responsibility of the heads of divisions, district/precinct Commanders, section and unit officers-in-charge to insure that monthly firearm inspections are conducted.

## XIV. USE OF FORCE REPORTING

A. When an officer takes any action that results in (or is alleged to have resulted in) injury or death to another person including traffic accidents and/or applies force through the use of lethal or non-lethal weapons, an official police report shall be submitted which shall include the circumstances surrounding the incident, a description of injuries, medical treatment received and the type of weapons involved.

B. The officer involved in the altercation shall notify both the beat area supervisor and their immediate supervisor.

C. The beat area supervisor where the incident occurred is responsible for ensuring that the report is completed and a copy forwarded to the involved employee's commanding officer.

## XV. REVIEW PROCEDURE FOR USE OF FORCE INCIDENT INVOLVING SERIOUS BODILY INJURY OR THE USE OF A FIREARM

When an officer is involved in a shooting incident the responding officers should promptly remove from the scene the officer or officers involved.

Incidents involving the application of force through the use of a firearm or incidents involving serious physical injury or death shall be reported immediately by the employee's supervisor to the Internal Affairs Section for investigation and further disposition.

The employee's supervisor should be responsible for arranging contact with the family of the officer involved in the shooting and peer support counselor. If the officer wishes to contact an attorney, that communication should be facilitated. The employee's supervisor or the Internal Affairs Investigator shall contact the Staff Psychologist if upon their observation of the employee that the services of the Staff Psychologist is needed.

Officers at the scene should provide a compassionate response to the officer(s) involved in a shooting. The Staff Psychologist should assess the mental status of the officer as soon as possible. The officer's weapon should be confiscated. However, a replacement weapon can be issued after a 24-hour period, upon the recommendation of the Staff Psychologist. If the psychological evaluation determines that the officer is emotionally affected by the experience, he or she should not be given a replacement weapon and a period of rest of no more than

24 hours before a detailed interview should be allowed.

Administrative and criminal investigations should be conducted with tact, and measures should be taken to treat the officer involved in a shooting incident with the same respect that any officer taking a line of duty action deserves.

Any officer involved in a shooting incident may be placed on administrative leave, and mandatory counseling should be provided within the next two days. Counseling should be extended to the officer's family on voluntary basis.

## XVI. CHIEF'S REVIEW OF USE OF FORCE INCIDENT

Internal Affairs Section shall conduct an investigation in circumstances described in Section XV and forward a copy of a report of its investigation to the G.P.D. Legal Office. The Legal Office shall submit a summary of findings to the Chief of Police. The findings shall include the relevant facts and circumstances surrounding the incident and a conclusion as to whether department directives were violated.

## XVII. RELIEF FROM DUTY

A. In the event that the use of force by an officer results in death or serious injury, the officer shall be relieved from line-duty assignments pending an administrative review of the case. The officer may be assigned to desk watch or other non-line assignment or may be assigned to Administrative Leave with pay base on recommendation of the Staff Psychologist.

B. To defuse the stigma of seeking counseling, there shall be a confidential debriefing with the Staff Psychologist prior to returning to duty. This debriefing should be held as soon after the incident as practical. Return to duty and/or follow-up sessions should be determined by the Staff Psychologist.

C. The officer shall not be returned to a field assignment until the conclusion of the investigation and it is deemed appropriate by his commanding officer and the Chief of Police as recommended by Department Psychologist.

J.M. MARQUES
Acting