LAW OFFICE OF DANIEL J. BERMAN
Suite 801, DNA Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone No.: (671) 922-7570
Email: djberman@pacificlawyers.law

Attorneys for Plaintiff:

*JOSE ARLINE DADIVAS DEVELLES*

**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| JOSE ARLINE DADIVAS DEVELLES,<br><br>Plaintiff,<br><br>vs.<br><br>GOVERNMENT OF GUAM, KENDALL J.N. DIAZ, AREN L. FABILA, PATRICK G. CORPUZ, JOHN W. BARCINAS, DONALD FLICKINGER and DOES 1 TO 10,<br><br>Defendants. | CIVIL CASE NO. 1:24-cv-00019 |

# PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE DISMISSAL OF ALL COUNTS AGAINST DEFENDANTS KENDALL J.N. DIAZ, AREN L. FABILA, AND JOHN W. BARCINAS

## TABLE OF CONTENTS

INTRODUCTION ........ 1

RELEVANT FACTS ........ 1

LEGAL STANDARDS ........ 4

POINTS AND AUTHORITIES ........ 6

I. SUMMARY JUDGMENT AND DISMISSAL ARE UNWARRANTED. ........ 6

A. Moving Defendants Directly Violate CVLR 56(a) ........ 7

B. No Declarations Made With Personal Knowledge ........ 8

C. Subject Matter Jurisdiction Exists in this Matter ........ 10

1. No Severe Crime Alleged or Charged ........ 13

2. Jose Posed No Immediate Threat to Anyone's Safety ........ 15

3. Jose Did Not Attempt to Flee and Any "Resistance" is Disputed ........ 16

E. The Police Use of Gross Physical Force Was Excessive ........ 17

F. Jose's Constitutional Rights Were Clearly Established and Violated ........ 18

G. Supplemental Jurisdiction Over Guam Law Claims ........ 22

CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Cases**

*Alston v. Cnty. Of Sacramento Sheriff's Dep't*, No. 2:13-CV-1488 DAD, 2015 U.S. Dist. LEXIS 147738, 2015 WL 6689636 (E.D. Cal. October 29, 2015) .................... 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................... 5, 6

*Arana v. Testa Motors, Inc.*, No. 2:22-CV-08664-RGK-JC, 2024 U.S. Dist. LEXIS 35526, 2024 WL 693802 (C.D. Cal. Jan. 8, 2024) .................... 8

*Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235 (2006) .................... 22

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .................... 10, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................... 4

*Balint v. Carson City*, 180 F.3d 1047 (9th Cir. 1999) (en banc) .................... 6

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013) .................... 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................... 5

*Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179 (9th Cir. 1988) .................... 15

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) .................... 14, 20

*Boarman v. Cty. of Sacramento*, 55 F. Supp. 3d 1271 (E.D. Cal. 2014) .................... 14

*Bondurant v. City of Battleground*, No. 3:15-CV-05719-KLS, 2016 U.S. Dist. LEXIS 164494, 2016 WL 6973267 (W.D. Wash. November 28, 2016) .................... 23

*Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995) .................... 24

*Branscum v. San Ramon Police Dep't*, 606 F. App'x 860 (9th Cir. 2015) .................... 21

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) .................... 13, 19

*Cable v. City of Phoenix*, 647 F. App'x 780 (9th Cir. 2016) .................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................... 5, 7

*Colvin v. United States*, 479 F.2d 998 (9th Cir. 1973) .................... 9

*Cuevas v. City of Tulare*, 107 F.4th 894 (9th Cir. 2024) .................... 10

*Dahlstrom v. Lifecare Ctrs. of Am., Inc.*, 2022 U.S. Dist. LEXIS 33585, 2022 WL 584246 (W.D. Wash. Feb. 8, 2022) .................... 10

*Davenport v. Causey*, 521 F.3d 544 (6th Cir. 2008) .................... 12

*Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) ........ 19

*Elliott v. Leavitt*, 99 F.3d 640 (4th Cir. 1996) ........ 11

*Estate of Jones v. City of Martinsburg*, 961 F.3d 661........ 20

*Falcon Enters., Inc. v. Publ'rs Serv., Inc.*, 438 Fed. Appx. 579 (9th Cir. 2011) ........ 8

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002)........ 5

*Graham v. Connor*, 490 U.S. 386 (1989) ........ 6, 11, 13, 15, 16, 20

*Gumataotao v. Highsmith*, 2022 U.S. Dist. LEXIS 58532 (D. Guam Mar. 28, 2022) ........ 23, 24

*Gumataotao v. Highsmith*, 2023 U.S. Dist. LEXIS 42794 (D. Guam Mar. 13, 2023) ........ 23

*Hafer v. Melo*, 502 U.S. 21 (1991) ........ 10

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001)........ 6

*Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123 (9th Cir. 2017) ........ 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)........ 10

*Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526 (9th Cir. 2011) ........ 9

*Lewis v. Caraballo*, 98 F.4th 521 (4th Cir. 2024)........ 11, 12, 15, 16, 20

*Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003) ........ 17

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017)........ 13

*Lowry v. City of San Diego, Cal.*, 138 S. Ct. 1283 (2018)........ 13

*Luna v. Hoa Trung Vo*, CV F 08-1962 AWI SMS, 2010 U.S. Dist. LEXIS 121543, 2010 WL 4878788 (E.D. Cal. Nov. 17, 2010)........ 8

*Mackay v. City of Salinas*, 2022 U.S. Dist. LEXIS 126856, 2022 WL 2802981 (N.D. Cal. Jul. 18, 2022) ........ 21

*Malley v. Briggs*, 475 U.S. 335 (1986)........ 18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ........ 5

*Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........ 5

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) ........ 19

*Miller v. Lovett*, 879 F.2d 1066 (2d Cir. 1989)........ 24

*Motorola, Inc. v. Pick*, No. CV 04-2655ABCSHX, 2004 U.S. Dist. LEXIS 30661, 2004 WL 5472092 (C.D. Cal. June 22, 2004) ..... 8

*Myers v. City of Hermosa Beach*, 299 Fed. Appx. 744 (9th Cir. 2008) ..... 21

*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) ..... 12

*Orr v. Bank of America*, 285 F.3d 764 (2002) ..... 9

*Owens ex rel. Owens v. Lott*, 372 F.3d 267 (4th Cir. 2004) ..... 18

*P.B. v. Koch*, 96 F.3d 1298 (9th Cir. 1996) ..... 6

*Palazzo v. Bonaventura*, No. 2:12-CV-00562-MMD-VCF, 2012 U.S. Dist. LEXIS 80998, 2012 WL 2132279 (D. Nev. June 12, 2012) ..... 23

*Parker v. Scrap Metals Processors Inc.*, 468 F.3d 733 (11th Cir. 2006) ..... 22

*Paulino v. Cruz*, No. 16-CV-02642-NC, 2017 U.S. Dist. LEXIS 105491, 2017 WL 2903172 (N.D. Cal. July 7, 2017) ..... 21

*Rice v. Morehouse*, 989 F.3d 1112 (9th Cir. 2021) ..... 11, 15

*Rogoz v. City of Hartford*, 796 F.3d 236 (2d Cir. 2015) ..... 12

*Rolfs v. City of Great Falls*, 2026 U.S. Dist. LEXIS 35714, 2026 LX 27678 ..... 19

*Rosenbaum v. City of San Jose*, 107 F. 4th 919 (9th Cir. 2024) ..... 17

*Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994) ..... 16

S.R. *Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019) ..... 14

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ..... 4, 9

*Sallenger v. Oakes*, 473 F.3d 731 (7th Cir. 2007) ..... 12

*Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002) ..... 17

*Saucier v. Katz*, 533 U.S. 194 (2001) ..... 10, 20

*Schmidt v. County of Nev.*, 2011 U.S. Dist. LEXIS 14492, 2011 WL 445836 (E.D. Cal. Feb. 7, 2011) ..... 24

*Smith v. City of Hemet* 394 F.3d 689 (9th Cir. 2005) ..... 6, 14, 16, 17

*Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167 (6th Cir. 2004) ..... 15

*Turner v. Graff*, No. C 10-5709 CRB PR, 2012 U.S. Dist. LEXIS 116631, 2012 WL 3656492 (N.D. Cal. Aug. 17, 2012) ..... 21

*Tuuamalemalo v. Greene*, 946 F.3d 471 (9th Cir. 2019) ..... 18, 19

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) .......... 22

*United States v. Fowler*, 58 F.4th 142 (4th Cir. 2023) .......... 13

*United States v. Mitchell*, 78 F.4th 661 (4th Cir. 2023) .......... 12

*Valladares v. Cordero*, 552 F.3d 384 (4th Cir. 2009) .......... 20

*Wilson v. Layne*, 526 U.S. 603 (1999) .......... 18

*Winterrowd v. Nelson*, 480 F.3d 1181 (9th Cir. 2007) .......... 20

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) .......... 4

*Young v. Cty. of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011) .......... 13

*Zorn v. Linton*, 607 U.S. 568 (2026) .......... 18, 22

**Statutes**

28 U.S.C. § 1331 .......... 10

28 U.S.C. § 1367 .......... 22

28 U.S.C. § 1367(a) .......... 22

42 U.S.C. § 1983 .......... 1, 3, 10, 22, 23, 24

**Rules**

Fed. Civ. L.R. 11 .......... 8

Fed. Civ. L.R. 56(a) .......... 4, 6, 7, 8

Fed. Civ. L.R. 56(b) .......... 4, 8, 17

Fed. Civ. L.R. 7(b) .......... 6, 8

Fed. R. Civ. P. 12(b)(1) .......... 4, 10

Fed. R. Civ. P. 12(b)(6) .......... 4

Fed. R. Civ. P. 15(a) .......... 5

Fed. R. Civ. P. 56(a) .......... 5

Fed. R. Civ. P. 56(c) .......... 9

Fed. R. Civ. P. 56(e) .......... 15

Fed. R. Evid. 803 .......... 9

Fed. R. Evid. 803(8) ........ 9

Fed. R. Evid. 803(8)(A)(iii) ........ 9

Plaintiff JOSE ARLINE DADIVAS DEVELLES ("Jose") opposes the Motion for Summary Judgment or in the Alternative Dismissal of All Counts Against Defendants Kendall J.N. Diaz, Aren L. Fabila, and John W. Barcinas ("moving defendants").

## INTRODUCTION

This is an action to hold the Government of Guam ("GovGuam") and at least five police officers accountable for their unlawful, malicious battery on Jose after a vehicle stop on March 4, 2023. Jose was subjected to excessive force by Defendants Kendall J. N. Diaz ("Diaz"), Aren L. Fabila. ("Fabila") and John W. Barcinas ("Barcinas"), who with fellow Guam Police Department ("GPD") officers ganged up on and severely beat him in violation of Jose's clearly established constitutional rights. As a result, in his Second Amended Complaint ("SAC"), Jose alleges 42 U.S.C. § 1983 claims in Counts VII – Deprivation of Federal Civil Rights, Count VIII – Failure to Intervene (42 U.S.C. § 1983), Count IX—Government Custom or Policy/Failure to Supervise or Train and Count XII – Attorney's Fees. Diaz, Fabila, and Barcinas now request summary judgment and dismissal of the claims against them. Neither dismissal nor summary judgment is warranted.

## RELEVANT FACTS

This action was commenced to hold GovGuam, the GPD, and several police officers accountable for their unlawful, malicious violations of Jose's rights. During a vehicle stop on March 4, 2023, Jose was unlawfully, physically pulled out of his vehicle by Defendant Diaz. Defendants Fabila and Barcinas and other police officers joined the scene because the radio report called Jose, without any provocation, an "Adam Henry" at his stop. Officers violently threw or tackled Jose onto the ground and maliciously beat him in the head, face, ribs, and back, causing serious and permanent injuries. Jose Decl. ¶¶4-7. As a diminutive, elderly, cancer survivor, retiree with no physical strength to resist, Jose was easy prey. *Id.* ¶3. After maliciously assaulting and battering Jose, the

Defendants initially refused to render much needed medical aid but finally relented and called for an ambulance. *Id.* ¶9. After Jose received medical care at the hospital for his severe injuries, including to the eye and ribs, he was booked and released. Jose was never ticketed, criminally charged or indicted for any traffic or criminal offense. *Id.* ¶12. Jose then discovered the police had taken his $2,000.00 in cash from his wallet. *Id.* ¶10.

The SAC contains twelve (12) counts, all of which form part of the same case or controversy. Jose asserts violations of 42 U.S.C. § 1983 against multiple defendants. Jose alleges that he "was and remains a retiree, senior citizen of 63 years of age, of slim build with height of 5 feet, 4 inches, and then weight of only 130 pounds. He lacks the physical strength to resist physical harm." Doc. 40 ¶17. *See also* Doc. 40 at p. 33 (GPD arrest record listing Jose as 5'6" and 135.0 lbs); Doc. 40 at 46 (Guam Regional Medical City patient results showing Jose as 63 years old in March 2023) [1]; Jose Decl. ¶3. Soon after Jose was pulled over for a traffic stop and requested to see the officer's radar to verify the alleged speeding before providing his license, Fabila, Barcinas, and other GPD officers surrounded Jose's vehicle to gang up with Diaz on Jose. The additional officers arrived on scene based on Diaz's request for assistance and identification of Jose as an "Adam Henry" to the GPD and fellow officers. Doc. 40 ¶¶18-21. *See also* Jose Decl. ¶4.

Diaz, Fabila, and "at least one other officer pulled Jose violently from his vehicle causing him to fall very hard on the ground." Doc. 40 ¶22; Jose Decl. ¶5. Jose alleges that Officer Fabila and other GPD officers "punched the back of Jose's head and struck Jose's left eye or caused Jose's eye to strike the ground through their actions." Doc. 40 ¶23; Jose Decl. ¶6. "Officers of the GPD also caused Jose to suffer great pain and injury to his back and ribs through their actions." Doc. 40 ¶24; Jose Decl. ¶¶7-8. "Due to the swelling, extreme pain, and severity of the injuries, Jose asked the officers to bring him to the

[1] In Jose's opposition Declaration, he authenticates the exhibits to the SAC, including his medical records. Jose Decl. ¶17.

hospital." Doc. 40 ¶25; Decl. Jose ¶¶7, 9, 11. On April 10, 2023, GPD's abstract of investigation classified the incident as an "Assault," with "bruised ribs and a Hematoma to the eye as the injuries sustained." Doc. 40 ¶33.

As to Diaz, Fabila, and Barcinas, the moving defendants in the instant motion for summary judgment, together with certain unnamed GPD officers, Jose alleges Assault (Count I). In the Assault claim, Jose alleges Diaz "intentionally threatened Jose" and then pulled "Jose from his vehicle, without his consent." Doc. 40 ¶38. Jose further alleges that due to his "senior age, cancer recovery, weak and demure physical characteristics, he was easy prey to be beaten and robbed by the designing officers of the GPD." *Id.* ¶41. *See also* Jose Decl. ¶3 ("I am a cancer survivor and I lacked and still lack the physical strength to resist physical harm."). Jose alleges Battery in Count II because, among other conduct, Diaz, Fabila, and Barcinas pulled Jose from his vehicle without consent, and "then threw Jose, a diminutive, weak, much smaller and older man, to the ground and proceeded to beat him until Jose was severely injured." *Id.* ¶¶46-47. Jose also alleges Intentional Infliction of Emotional Distress (Count III), *id.* ¶¶52-58, and Negligence (Count IV) against Diaz, Fabila and Barcinas. *id.* ¶¶59-63.

Jose sues Diaz, Fabila, and Barcinas in their individual capacity under 42 U.S.C. § 1983 in Count VII. *Id.* ¶¶ 87-102. Importantly, Jose specifically alleges that "Defendants knew or should have known of [Jose's constitutional] rights at the time of the complained of conduct as they were clearly established at that time." *Id.* ¶96. He alleges Diaz, Fabila, and Barcinas, together with other GPD officers, "used excessive force at the time they unreasonably and unlawfully pulled Jose from his vehicle and aggressively beat him." *Id.* ¶98; Jose Decl. ¶14.[2]

---

[2] Jose alleges a section 1983 Failure to Intervene claim (Count VIII) against Fabila, Barcinas, and unnamed GPD officers. Doc. 40 ¶¶107-116. Fabila is a named defendant in Count X for section 1983 Supervisor Liability. *Id.* ¶¶132-140. Diaz, Fabila, and Barcinas are named defendants in Count XI for Conversion, *id.* ¶¶ 141-148, and Count XII for Attorney's Fees, *id.* ¶¶149-156.

Diaz, Fabila, and Barcinas move for summary judgment and dismissal of all claims against them. Doc. 88 at 5. They argue that Jose's "injuries were the result of the reasonable force used to overcome Develles' unlawful conduct and resisting arrest." Doc. 88 at 7. Jose offers his sworn testimony he "did not actively or substantially resist arrest or attempt to flee custody when pulled over by GPD on March 4, 2023." Jose Decl. ¶8. Further, under CVLR 56(b), Jose offers a separate concise statement setting forth all material facts as to which he contends there exists a genuine issue necessary to be litigated.[3] On the record properly before this Court, genuine issues of material fact exist as to whether the moving defendants used excessive force.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a facial attack, the court "assume[s] [plaintiff's factual] allegations to be true and draw[s] all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed factual allegations but must provide more than just a "formulaic recitation of the elements of a cause of

[3] As explained below and in Jose's concise statement, the moving defendants here fail to submit a separate concise statement of material facts despite the express requirement in CVLR 56(a) to do so.

action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

A court shall only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[4]

If the moving party satisfies this initial burden, Rule 56 requires the party opposing the motion to respond with a "showing sufficient to establish the existence of [each properly challenged] element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.[5] "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[4] A factual dispute is "genuine" only if there is a sufficient evidentiary basis on which a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under governing law. *Id.*

[5] In attempting to establish a genuine factual dispute, the opposing party may not rely upon conclusory allegations or pleading unsupported by factual data, but instead must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See id.* at 324. Here defendants lack this support.

At the summary judgment stage, the court's function is to determine whether there is any genuine issue for trial. *Anderson*, 477 U.S. at 249; *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc). This Court requires a separate concise statement of material facts. *See* CVLR 7(b); CVLR 56(a). Moving defendants failed to comply.

**POINTS AND AUTHORITIES**

**I. SUMMARY JUDGMENT AND DISMISSAL ARE UNWARRANTED.**

This motion is grounded on disputed questions of fact for which Trial is required. The Fourth Amendment bars police officers from using excessive force to carry out an arrest. *Graham v. Connor*, 490 U.S. 386 (1989). Officers "may only use such force as is 'objectively reasonable' under the circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). Whether a particular use of force is reasonable requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). The facts must be viewed in the light most favorable to Plaintiff, the non-moving party. *Smith v. City of Hemet* 394 F.3d 689, 701 (9th Cir. 2005). "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.* Even where some force is justified, the amount actually used may be excessive. *P.B. v. Koch*, 96 F.3d 1298, 1303-04 (9th Cir. 1996).

The moving defendants fail to meet their initial burden as summary judgment movants. They neglected to file the mandatory separate statement of material facts. They filed no declarations of firsthand personal knowledge, and only counsel submits three exhibits. *See* Docs. 89 (Declaration), 89-1 (GPD, Definitions and Procedures for Use of Force and Deadly Force), 89-2 (GPD's Use of Force guidelines and standards), and 89-3 (Defendant Fabila's field case supplement report dated March 4, 2023). Counsel lacks

personal knowledge as to the contents of the report and his statements are hearsay. Counsel's attempt to authenticate the report fails. The report itself states in all uppercase letters at the top of every page "NOT FOR OFFICIAL RELEASE." *See* Doc. 89-3 at pp. 1-3. Despite this, Fabila and/or his counsel are attempting to present and use the report officially in this Court. Certain details in the supplemental report as to the circumstances of the seizure and use of force on Jose, especially to the extent they are conclusions and opinions, are hearsay for which no public record or other exception applies. The field case supplement report, Doc. 89-3, is not self-authenticating, is not sworn, and is not under penalty of perjury. There is no attestation that the report was prepared on the typed date.

Defendants offer the hearsay statement that Fabila used an "open hand distractionary strike," Doc. 89 at 9 (citing Doc. 89-1 at 6), while Jose alleges a punches and more gross violence to his head and body, including while Jose was face-down on the ground, Doc. 40 ¶23.[6] For summary judgment purposes, the moving defendants' supporting declaration of counsel provides nothing meaningful. In opposition, Jose's filed sworn declaration verifies his allegations and properly opposes the motion. Diaz, Barcinas, and Fabila have not shown that dismissal is proper and they have failed to identify those portions of the record that demonstrate the absence of a genuine issue of material fact, which is their express burden as the parties moving for summary judgment. *See Celotex*, 477 U.S. at 323. Genuine factual issues remain for Trial as to their liability for the counts alleged in the SAC.

### A. Moving Defendants Directly Violate CVLR 56(a)

In this Court, "A motion for summary judgment **shall** be accompanied by a supporting memorandum **and separate concise statement** detailing each material fact as

[6] *See also* Doc. 40 at 29 ("punching back [of] head and smash my left side eye"); Doc. 40 at 57 (Jose "reports that he was assaulted[;] states that he was punched in the face and in the back of the head and in the right ribs[; and] states that his earrings were pulled out of his ear[.]"); Decl. Jose ¶8 ("officers stomped, kicked, and/or punched my back and ribs when I was face-down on the ground and . . . subdued.").

to which the moving party contends that there are no genuine issues to be tried that are essential for the Court's determination of the summary judgment motion." CVLR 56(a) (emphasis added). *See also* CVLR 7(b) (requiring each motion to be accompanied by "where appropriate, a separate statement of material facts.").

Moving defendants violate the rules and fail to accompany their motion with a separate concise statement of material facts as mandated. In contrast, Jose has submitted his concise statement of material facts he contends have "a genuine issue necessary to be litigated" as required by CVLR 56(b). The Court should deny the instant motion for failure to follow CVLR 56(a). *See, e.g.*, CVLR 11 (authorizing sanctions for failure to comply with any provision of the local rules); *Motorola, Inc. v. Pick*, No. CV 04-2655ABCSHX, 2004 U.S. Dist. LEXIS 30661, 2004 WL 5472092, at *3 (C.D. Cal. June 22, 2004) ("[F]ailure to provide the Court with a separate statement of uncontroverted facts is fatal to . . . motions for summary judgment."); *Arana v. Testa Motors, Inc.*, No. 2:22-CV-08664-RGK-JC, 2024 U.S. Dist. LEXIS 35526, 2024 WL 693802, at *2 (C.D. Cal. Jan. 8, 2024) (denying motion for summary judgment because "[d]efendant outright failed to file a statement of uncontroverted facts, and therefore fails to demonstrate that any fact in support of its Motion is uncontroverted and beyond dispute."); *Falcon Enters., Inc. v. Publ'rs Serv., Inc.*, 438 Fed. Appx. 579, 582 (9th Cir. 2011) ("The district court appropriately denied [Plaintiff]'s [motion for summary judgment] based on its findings that [Plaintiff] . . . neglect[ed] to submit a statement of undisputed facts . . . ."); *Luna v. Hoa Trung Vo*, CV F 08-1962 AWI SMS, 2010 U.S. Dist. LEXIS 121543, 2010 WL 4878788, at *2-3 (E.D. Cal. Nov. 17, 2010) (denying motion for summary judgment when moving party failed to include a statement of undisputed facts).

**B. No Declarations Made With Personal Knowledge**

Even if the Court were to look past moving defendants' fatal local rule violation, they fail to offer admissible evidence for the Court to consider at the summary judgment

stage. Pursuant to Rule 56(c) of the Federal Rules of the Civil Procedure, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." For a document to be admissible, it must be "authenticated through personal knowledge ... and the affiant must be a competent 'witness who wrote [the document], signed it, used it, or saw others do so.'" *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (quoting *Orr v. Bank of America*, 285 F.3d 764, 773-74 & n.8 (2002).

While police reports can qualify as a public record excluded from the rule against hearsay under Federal Rule of Evidence 803(8), courts consistently exclude "portions of police reports that contained the officer's opinions and conclusions." *Meyer v. Jencks*, 513 F. Supp. 3d 706, 709 (E.D. La. 2021).[7] Here, Barcinas does not offer a declaration or affidavit, instead his counsel attempts to authenticate the Field Case Supplement Report (Doc. 89-3) "based on [counsel's] review of the documents." Doc. 89 ¶6. Barcinas has not offered a declaration based on his personal knowledge and his counsel cannot testify with personal knowledge as to the contents of the Field Case Supplement Report. Considering Jose's declaration, Jose's separate statement of concise facts, and the unauthenticated facts moving defendants present, the Court should deny summary judgment and recognize the myriad of genuine issues of material fact requiring a Trial on all counts, including Jose's federal excessive force claims.

[7] A hearsay statement may be admissible if it is "a record or statement of a public office" that sets out "in a civil case. . . factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). "Hearsay contained in a police report is inadmissible[.]" *Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973) (internal citations omitted). "Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay[.]" *Id.* "[P]olice reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer." Fed. R. Evid. 803 n. 8(c).

**C. Subject Matter Jurisdiction Exists in this Matter**

Moving defendants assert sovereign immunity and request dismissal under Rule 12(b)(1). Doc. 88 at 9. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. By including civil rights claims under § 1983, a plaintiff presents federal questions within a federal district court's original jurisdiction. *Dahlstrom v. Lifecare Ctrs. of Am., Inc.*, 2022 U.S. Dist. LEXIS 33585, *8-9, 2022 WL 584246 (W.D. Wash. Feb. 8, 2022) (explaining that there was "no question" that complaint which included both state law claims and claims under 42 U.S.C. § 1983 was properly removed based on federal subject matter jurisdiction). Jose states claims founded on § 1983, including a claim for excessive force, establishing subject-matter jurisdiction.

**D. No Qualified Immunity**

Diaz, Fabila, and Barcinas have waived qualified immunity.[8] Once government-official defendants raise qualified immunity as a defense, they avoid liability if the plaintiff cannot show (1) that they violated a federal constitutional right and (2) that the violation was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (internal quotation marks and citations omitted). If the facts "[t]aken in the light most favorable] to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right," *Saucier*, 533 U.S. at 201, the court then considers if the right was clearly established at the time of the alleged violation. *Id.* A right is clearly established if, at the time of the challenged conduct, "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations and quotations omitted).

---

[8] State officials sued in their personal capacity are not entitled to Eleventh Amendment immunity. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991). The moving defendants are not entitled to sovereign immunity and are "persons" amenable to suit under § 1983. *See id.*

Viewing the evidence in the light most favorable to Jose, a reasonable jury could conclude that the use of force by Officer Fabila and other GPD officers was disproportionate, as well as shockingly wrong, because they punched the back of Jose's head and struck his eye or caused Jose's eye to strike the ground through their actions after pulling Jose violently from his car and causing him to fall very hard on the ground. *See* Doc. 40 ¶¶22-23[9]; *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024) (district court did not err in denying summary judgment to state trooper Carballo on Lewis' excessive force claim where a reasonable jury could find Carballo's use of force was "disproportionate because he continued punching Lewis in the head after Lewis was subdued or while Lewis was not resisting arrest.").

A court determines whether an officer's force was excessive based on a standard of "objective reasonableness." *Graham*, 490 U.S. at 399. "The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396-97). In *Graham*, the Supreme Court specified three factors for assessing the reasonableness of force: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. The most important is the second factor—whether the suspect posed an immediate threat to others." *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (citation and internal quotation marks omitted).

The force here was more than significant. The amount of force must be considered in light of the particular circumstances when it was used. *Rogoz v. City of Hartford*, 796

---

[9] *See also* Doc. 40 at 29 ("punching back [of] head and smash my left side eye"); Doc. 40 at 57 (Jose "reports that he was assaulted[;] states that he was punched in the face and in the back of the head and in the right ribs[; and] states that his earrings were pulled out of his ear[.]"). Jose Decl. ¶¶5-9 (violently pulled from vehicle, forced to the ground, punched back of head, punched and smashed left eye, stomped or punched back and ribs when face-down on the ground). This savage beat down is no single "distractionary strike."

F.3d 236, 247 (2d Cir. 2015). Viewing the facts in the light most favorable to Jose, the use of violent force here—including blows to the head and eye—was significant. A jury could find that Fabila and/or his fellow officers exerted a high magnitude of force onto Jose's head when he struck the elderly and slight, unarmed man in the head.

As the Fourth Circuit has noted, "we think it is common sense that the head is a particularly fragile part of the human body. It lacks a layer of muscle or fatty tissue that can absorb the impact of a blow, unlike body parts like the shoulder or thigh. Because the head contains the brain, it is commonly understood that head injuries can pose a substantial risk of serious and lasting physical harm." *Lewis*, 98 F.4th at 532. The eyes and ears are similarly fragile and vulnerable. *See, e.g., Nelson v. City of Davis*, 685 F.3d 867, 883-87 (9th Cir. 2012) (denying qualified immunity to officers who deployed "pepperball projectiles" against rowdy partygoers due to foreseeable risk that projectiles might strike and seriously injure partygoers in a vulnerable area such as the eye). Jose here was struck or otherwise directly impacted in his eyes and ears from the officers' deliberate use of force. *See* Doc. 40 at 29 (left eye swelling and tearing); Doc 40 at 35-36 (showing eye hematoma); Doc. 40 at 58 (facial bruising, bruising and swelling around left eye, two lacerations through earlobe).

Courts have repeatedly and understandably recognized the unique danger of strikes to the head. *See, e.g., Davenport v. Causey*, 521 F.3d 544, 553-54 (6th Cir. 2008) (fist blows to the head could cause serious injury or death); *Sallenger v. Oakes*, 473 F.3d 731, 740 (7th Cir. 2007) (same); *cf. United States v. Mitchell*, 78 F.4th 661, 670 (4th Cir. 2023) (noting in the sentencing context that "as little as one punch to the head . . . may cause a substantial risk of serious bodily injury within the meaning of the [Sentencing] Guidelines."). Despite moving defendants' unsworn contention that the officers only used one open fist strike, Doc. 88 at 6, no sworn evidence disputes Jose's sworn allegations that he was violently pulled to the ground and then punched, possibly by a

closed fist, Jose Decl. ¶¶5-6. Jose was understandably unable to discern who struck him, how he was struck, and how many times he was hit in the head and eye. He also alleged severe pain and injury to his back and ribs. *See* Doc. 40 ¶¶22-25.

**1. No Severe Crime Alleged or Charged**

Assessing the *Graham* factors weighs in Jose's favor. The first factor, the severity of the crime, significantly favors Jose. Here, Jose was pulled over allegedly for speeding, a non-violent traffic infraction.[10] Simple "[t]raffic violations," without more, do not justify "the use of a significant level of force." *Bryan v. MacPherson*, 630 F.3d 805, 828 (9th Cir. 2010). If the arrestee does not threaten anyone and does not resist arrest, using significant force is unreasonable. *See Cable v. City of Phoenix*, 647 F. App'x 780, 782 (9th Cir. 2016); *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1163 (9th Cir. 2011). If the arrestee offers "passive resistance," his conduct warrants a "lesser degree of force" than in "situations in which the suspect actively resists arrest." *Lowry v. City of San Diego*, 858 F.3d 1248, 1258 (9th Cir. 2017), *cert. denied sub nom. Lowry v. City of San Diego, Cal.*, 138 S. Ct. 1283 (2018). In other words, officers "are only permitted to use an amount of force that is reasonable to overcome th[e] resistance" they encounter. *Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013). This standard requires courts to essentially weigh the results of two factual inquiries against each other: (1) where the arrestee's level of resistance falls on the passive-to-active resistance scale, and (2) how much force the officers used in response.

Moreover, a police officer's "'provocative conduct' can trigger an individual's 'limited right to offer reasonable resistance.'" *Young*, 655 F.3d at 1164 (holding that "moving and circling" in response to being unexpectedly pepper sprayed was a reasonable amount of resistance to officers' provocative conduct); *see also Blankenhorn v.*

[10] Because the severity of the crimes at issue are central to the *Graham* analysis, this Court may take judicial notice of them. *See United States v. Fowler*, 58 F.4th 142, 152 (4th Cir. 2023) (Courts "may take judicial notice of facts outside the record where the fact may not be reasonably disputed and is relevant and critical to the matter on appeal.") (internal quotations omitted).

*City of Orange*, 485 F.3d 463, 479-80 (9th Cir. 2007) (holding that "[t]he lack of forewarning, the swiftness, and the violence with which the defendant officers threw themselves upon" the plaintiff were factors to consider in determining whether conduct provoked reasonable resistance). Indeed, an excessive use of force "in the events leading up to a person's resistance could mean the resistance" was lawful, "which would in turn vitiate probable cause to arrest" an individual for obstructing or resisting an officer. *Boarman v. Cty. of Sacramento*, 55 F. Supp. 3d 1271, 1286 (E.D. Cal. 2014).

When Diaz pulled over Jose, he told Jose the violation was for speeding. Doc. 40 ¶¶18-19. A reasonable jury could conclude that Jose's request for verification of the speeding allegation, was not obstructing or resisting; and, identifying Jose as an "Adam Henry" was uncalled for and improperly identified Jose as a threat, despite the nature of the alleged violation—speeding. The severity of the crime at issue is both a proxy for how dangerous a suspect is at the time force is applied and an independent factor in deciding a constitutional violation. S.R. *Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019). Jose's alleged speeding infraction is in strong contrast to scenarios where police knowingly are pursuing or confronting someone suspected of highly dangerous or violent behavior. *See, e.g., Smith v. Olvera,* 769 F. Supp. 3d 1147 (D. Nev. 2025) (discussing that the first *Graham* factor—the severity of the crime—weighed in favor of finding the use of force reasonable where the suspect evaded officers in a high-speed chase before the arrest, hit other cars with his truck, and sped through yards and residential areas before hitting a tree, resulting in recommended charges of assault with a deadly weapon, assault on a police officer, attempted homicide, felony evading with a motor vehicle, and felony vandalism). Alleged imprudent driving or speeding (without a traffic ticket) is not even a minor infraction. In response to alleged speeding and perceived noncompliance, the officers here acted with extreme rush to judgment and disproportionate force.

**2. Jose Posed No Immediate Threat to Anyone's Safety**

The second and most important factor weighs strongly in Jose's favor, because a reasonable jury could find that he posed no "immediate threat" to anyone's safety, let alone three or more armed and allegedly trained GPD officers. *See Graham*, 490 U.S. at 396. To begin with, Jose was unarmed. And Jose did not attempt to attack the officers. The allegation made by Fabila that Jose appeared to reach for his waistband where he might have hidden a weapon (he was unarmed), Doc. 89-3 at 3, is a disputed material fact and, to the extent that it is a conclusion or opinion and not merely an observation, it is hearsay that should not be admitted and considered at this stage. It is also controverted by Jose's sworn proof. *See* Jose Decl. ¶13 (Jose did not actively or substantially resist arrest or attempt to flee custody before or after being pulled over by GPD), ¶16 (Jose did not threaten or pose a threat to any GPD Officers at any time).

As noted above, Fabila's supplemental report is inadmissible and should not be considered at summary judgment.[11] Regardless, any material the Court can properly consider in the report does not show Jose posed a threat. *See, e.g.*, Doc. 89-3 at 3 (showing Jose as 5'4" and 140 lbs.); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (explaining courts may consider the "size and stature of the parties involved.").

The only purported "threat" Jose posed to the officers, then, was his apparent failure to immediately comply with a small number of commands by not initially presenting his driver's license. *See Lewis*, 98 F.4th at 532 (explaining that somewhat erratic conduct, failure to comply with a small number of lawful commands, and two to three instances of fists while officers were far from reach was not an immediate threat); *Rice*, 989 F.3d at 1124 (holding that while erratic behavior could lead an officer to be wary, it does not give rise to an immediate threat). Further, when the officers began applying

[11] A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) (citing Fed. R. of Civ. Pro. 56(e)).

force and struck Jose's head, the facts in the SAC allege Jose was at least partially subdued because of the number of officers surrounding him, their training and likely relative size, and their use of force to remove him from his vehicle and throw him to the ground. *See Lewis*, 98 F.4th at 532 (Lewis was partially subdued before Caraballo began striking his head); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) (noting officer was larger and trained). On these facts, a jury should find that Jose posed no reasonable threat or immediate danger to the officers that could have justified an escalation of force including one or more blows to the head of Jose, who Barcinas admits had no weapon, *see* Doc. 89-3 at 3. *See also* Jose Decl. ¶16. When the jury observes Jose and his diminutive, frail, and elderly appearance in person, this factor will quickly be resolved against the police.

**3. Jose Did Not Attempt to Flee and Any "Resistance" is Disputed**

The third factor, whether the suspect attempted to flee or actively resisted arrest, is neutral or should support Jose. *Graham*, 490 U.S. at 396. Jose made no attempt to drive away before or after being pulled over. He made no attempt to flee on foot or by vehicle. There is a difference between active resistance and a suspect "defending [themselves] against a sudden all-out physical assault from an officer," and as a result, an officer cannot use a plaintiff's "slight resistance to the attack to justify his escalation of the conflict." *Smith*, 781 F.3d at 103. An assault on an arrestee's head, after forcefully pulling him from his vehicle and subduing him, constitutes an unjustified escalation of force. Viewing the evidence in the light most favorable to Jose, his response in moving his limbs was a natural physical reaction to the officers' assault—a fearful reaction made all the more natural by his old age and slight build. *See Lewis*, 98 F. 4th at 521 (discussing that a material question of fact exists as to whether trooper used excessive force when he struck an adolescent in the head at the time he was non-dangerous, non-actively resistant, and partially subdued).

Here, a reasonable officer would not think that beating the head, face, back, and ribs of a frail, elderly, and nondangerous suspect, together with several trained and armed GPD officers, after pulling the suspect from the vehicle and subduing the suspect on the ground, was proportionate to any minimal resistance Jose allegedly gave or was capable of giving. Clearly the police did not even try to use their Tasers to stun Jose. Even if a limited degree of force was somehow justified, striking Jose's head and body was grossly beyond a proportional response.

**E. The Police Use of Gross Physical Force Was Excessive**

An officer is not entitled to summary judgment if the evidence, viewed in the nonmovant's favor, could support a finding of excessive force. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (excessive force cases often turn on credibility determinations, and the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom"). In the Ninth Circuit where the question of whether officers violated the Fourth Amendment turns on disputed issues of material fact, qualified immunity may not be resolved at summary judgment. *Santos v. Gates*, 287 F.3d 846, 855 (9th Cir. 2002); *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003).

Here, the parties dispute material facts bearing directly on the objective reasonableness of the force Fabila and the moving defendants used, including the nature and degree of Jose's resistance and whether he posed an immediate threat to officers or public safety. *See generally* Decl. Jose; Jose's CVLR 56(b) concise statement of material facts. The Court must assume all factual disputes are resolved, and all reasonable inferences are drawn, in Jose's favor. *See Rosenbaum v. City of San Jose*, 107 F. 4th 919, 924 (9th Cir. 2024). Taking the evidence in light most favorable to Jose including Jose's sworn declaration, Jose has shown that his Fourth Amendment rights were violated.

**F. Jose's Constitutional Rights Were Clearly Established and Violated**

Jose shows beyond debate that his rights were clearly established by preexisting law when GPD used significant force against him. In *Zorn v. Linton*, 607 U.S. 568 (2026), the Supreme Court of the United States concluded that the U.S. Court of Appeals for the Second Circuit erred in finding that Sergeant Jacob Zorn was not entitled to qualified immunity because the Second Circuit failed to identify a case where an officer using a routine wristlock on a protester after issuing a verbal warning, without more, was held to have violated the Constitution. In *Zorn*, the Supreme Court reinforced the idea that a "clearly established" constitutional right must be "beyond debate" for an officer to not be entitled to qualified immunity from suit.

To determine that a right is "[c]learly established," the court must conclude that the unlawfulness of the official's conduct was apparent from preexisting law. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine if a constitutional right is clearly established, courts look to "controlling authority" or to a "robust 'consensus of cases of persuasive authority.'" *Ashcroft*, 563 U.S. at 742 (quoting *Wilson*, 526 U.S. at 617); *accord Owens*, 372 F.3d at 279. Under this framework, precedent must define constitutional rights with a high degree of specificity, such that every reasonable official is on notice of what conduct is unlawful. In *Zorn*, 607 U.S. 568, the Supreme Court reaffirmed this standard. It is met here.

Ninth Circuit cases have never required that a suspect's every inch be immobilized before he is considered restrained for a reasonable force analysis. *See, e.g.*, *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (simply pinned down by officers). In *Tuuamalemalo*, the Ninth Circuit held that "the use of a chokehold on a non-resisting,

restrained person violates the Fourth Amendment's prohibition on the use of excessive force." *Tuuamalemalo*, 946 F.3d at 477. In *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003), the Ninth Circuit held that officers used excessive force by "press[ing] their weight on [the suspect's] neck and torso as he lay handcuffed on the ground." Similarly, the Ninth Circuit has found the use of a Taser excessive if the suspect does not pose an immediate threat. *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011). In *Mattos*, the court held that it was unreasonable to use a Taser on a suspect who committed a minor offense and did not present an immediate threat to the officers, even though she refused to exit the car. *See* 661 F.3d at 445-46; *see also Bryan v. MacPherson*, 630 F.3d 805, 826-30 (9th Cir. 2010) (use of a Taser unreasonable because suspect committed a minor traffic infraction and did not present an immediate threat). By contrast, defendant police officers eschewed even Taser use, in preference to a physical beating given to Jose.

Officers must reassess use of force in an evolving situation as the circumstances change. For example, while officers were at first justified in using a Taser on a suspect who had run away from a traffic stop but neither threatened the officers nor committed a serious offense, by the time the suspect "was prone and surrounded by multiple officers, there would have been no continuing justification for using intermediate force." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123 (9th Cir. 2017). Similarly, while force may be justified in restraining a suspect, the calculus changed "after he was handcuffed and lying on the ground." *Drummond*, 343 F.3d at 1059.

Jose committed a minor traffic infraction and did not present an immediate threat. His rights were clearly established based on controlling and persuasive precedents. For example, in *Rolfs v. City of Great Falls*, 2026 U.S. Dist. LEXIS 35714, *9, 2026 LX 27678, the District of Montana examined Ninth Circuit precedent and held that after drawing all inferences in favor of the plaintiff there, "clearly established law prohibited Souza and Marshall from punching and kneeing him in head and torso while he was prone,

restrained, and non-resisting." Similarly, the Fourth Circuit held that a non-dangerous, non-actively resistant, "at least partially subdued," arrestee's right to be free from excessive force in the form of head strikes was clearly established by 2018. *Lewis*, 98 F.4th at 535-36. The federal appellate court specifically agreed with the district court's conclusion that it was clearly established that "assaulting a subdued arrestee after officers have mitigated the immediate threat to themselves is objectively unreasonable." *Id.* at 534. In that case, the Fourth Circuit said that "viewing the facts in the light most favorable to Lewis, his defensive maneuvers did not constitute active resistance, and he did not attempt to flee, justifying less force. *Id.* Jose's head was punched and slammed to the ground here when he was already at least partially restrained and subdued. Jose Decl. ¶11. Nothing in the record shows Jose ever attempted to flee. This is excessive force and violation of clearly established rights sufficient to survive summary judgment taking the facts and inferences in Jose's favor. *See, e.g., Valladares v. Cordero*, 552 F.3d 384 (4th Cir. 2009)(concluding a police officer used excessive force when he slammed an unarmed fifteen-year-old's head into a car); *Estate of Jones*, 961 F.3d at 668 ("suspects can be secured without handcuffs when they are pinned to the ground").

The Ninth Circuit has explained that a clearly established right exists justifying denial of qualified immunity for an excessive force claim where a suspect is punched or otherwise forcefully hit on the back of the head for no apparent reason:

> Lewitt next argues that the district court erred when it denied qualified immunity on Silva's excessive force claim against him. We disagree. An officer must limit the use of force to an amount that is objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396-97; *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (stating force proper only when there is a need for force); *Winterrowd v. Nelson*, 480 F.3d 1181, 1184 (9th Cir. 2007) (same). However, the Court has also insisted that not every "push or shove" should be seen as a violation of the Fourth Amendment. *Saucier*, 533 U.S. at 209; *Graham*, 490 U.S. at 396. Moreover, we must account for an officer's need to make split-second decisions in the field. *Graham*, 490 U.S. at 396-97. The district court specifically discussed and Silva points to the fact that Lewitt punched or otherwise forcefully hit him on the back of the head for no apparent reason whatsoever. No

> reasonable officer could have thought that a gratuitous blow of that nature was proper. Thus, denial of qualified immunity as to Silva's excessive force claim was proper.

*Myers v. City of Hermosa Beach*, 299 Fed. Appx. 744, 746 (9th Cir. 2008).

More recently, a federal district court expressly found that "**the law was 'clearly established' in April 2018 such that Officers Mitchell and Urrutia would have been on notice that they could be violating Mackay's Fourth Amendment rights by punching and kicking him while on the ground.**" *Mackay v. City of Salinas*, 2022 U.S. Dist. LEXIS 126856, *29-32, 2022 WL 2802981 (N.D. Cal. Jul. 18, 2022) (emphasis added). Impact strikes on a non-resisting person even if designed to distract are likely to be excessive force. *See Branscum v. San Ramon Police Dep't*, 606 F. App'x 860, 863 (9th Cir. 2015) ("But if the jury concluded that no acts of resistance occurred, the officers' use of force would not be 'reasonably justified by the circumstances as [they] claim.'") (internal citations omitted); *Paulino v. Cruz*, No. 16-CV-02642-NC, 2017 U.S. Dist. LEXIS 105491, 2017 WL 2903172, at *5 (N.D. Cal. July 7, 2017) ("At the time of [plaintiff's] arrest, it was clearly established that the degree of force used by the officers [tackling, kneeling, and punching] would be excessive if [plaintiff] was unresisting and nonviolent."); *Turner v. Graff*, No. C 10-5709 CRB PR, 2012 U.S. Dist. LEXIS 116631, 2012 WL 3656492, at *4 (N.D. Cal. Aug. 17, 2012) ("Although plaintiff's resistance created a need for defendants to apply reasonable force to control him in order to maintain discipline and order, kicking, punching and kneeing plaintiff after he was taken down and was face down on the ground supports the finding that the force used by defendants was unreasonably excessive or brutal, even if plaintiff did not suffer significant injuries.").

Here, Jose alleges he was punched or otherwise forcefully hit in the back of the head for no apparent reason. He alleges he was not a threat and was not actively resisting when struck. Jose Decl. ¶¶13, 16. Moving defendants offer no sworn proof to support their unsubstantiated statements that they were "confronted with a combative, non-

cooperative person at 1:45am." *See* Doc. 88 at 16. Jose was unarmed and stopped for alleged speeding. GPD officers used excessive force on a frail, weak, retired senior citizen, already at least partially subdued and on the ground surrounded by officers when they punched him in the back of the head and injured his back and ribs. *See* Doc. 40 ¶23; Decl. Jose ¶¶6-8, 11. Any reasonable officer would have understood, including based on prior legal precedent, that what moving defendants did to Jose at the time of his traffic stop violates that right. The jury here could and should reasonably conclude that Jose was non-violent and not resisting. The jury could reasonably conclude GPD officers kneed, kicked, and punched Jose while he was on the ground. The law was clearly established and beyond debate in March 2023 such that GPD Officers Diaz, Fabila, and Barcinas would have been on notice that they could be violating Jose's Fourth Amendment rights by punching and kicking him and smashing his eye while on the ground. In light of the Supreme Court's recent decision in *Zorn*, denial of qualified immunity, dismissal, and summary judgment is proper here.

### G. Supplemental Jurisdiction Over Guam Law Claims

Moving defendants argue that this Court should decline to exercise supplemental jurisdiction over any remaining Guam law claims if the Court dismisses the federal claim. Doc. 88 at 17-19. First, the federal claim should survive dismissal and summary judgment. Second, the Guam law claims are inextricably intertwined with the federal claims.[12]

In cases like this one, district courts in the Ninth Circuit routinely exercise supplemental jurisdiction over state tort claims brought alongside Section 1983 actions

---

[12] "[A]ny civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367 provides litigants an "opportunity ... to pursue complete relief in a federal-court lawsuit." *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1240 (2006). The "case or controversy" formulation confers supplemental jurisdiction over state law claims that arise out of a "common nucleus of operative facts" with substantive federal claims. *Parker v. Scrap Metals Processors Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).

even where the state claims are not constitutional in nature. *See, e.g., Alston v. Cnty. Of Sacramento Sheriff's Dep't*, No. 2:13-CV-1488 DAD, 2015 U.S. Dist. LEXIS 147738, 2015 WL 6689636, *4 (E.D. Cal. October 29, 2015) (exercising supplemental jurisdiction over state negligence claim brought alongside Section 1983 claim).[13]

Similarly, in *Gumataotao*, this Court found that it had both original subject-matter jurisdiction over a federal § 1983 claim and supplemental jurisdiction over state law claims. *See Gumataotao v. Highsmith*, 2022 U.S. Dist. LEXIS 58532, *7 (D. Guam Mar. 28, 2022). The plaintiff, Gumataotao alleged "Counts II and III against GovGuam, and Counts I and III against Highsmith," *id.* at *2, because he had alleged battery by a law enforcement officer: Asst. AG Highsmith.[14] Although that case was eventually remanded to the Superior Court of Guam for other reasons,[15] this Court concluded that it had "original federal question jurisdiction due to Gumataotao's allegation that GovGuam and Highsmith violated § 1983." *Id.* at *2. In fact, in that case GovGuam removed the case from the Superior Court of Guam based on federal question jurisdiction. *Id.* This Court stated: "This court has original federal question jurisdiction due to Gumataotao's allegation that GovGuam and Highsmith violated § 1983. Because the court has original federal jurisdiction, the court "shall" have supplemental jurisdiction

---

[13] *See also Bondurant v. City of Battleground*, No. 3:15-CV-05719-KLS, 2016 U.S. Dist. LEXIS 164494, 2016 WL 6973267, *7 (W.D. Wash. November 28, 2016) (exercising supplemental jurisdiction over state tort claims for false imprisonment, false arrest and assault brought alongside Section 1983 claims); *Palazzo v. Bonaventura*, No. 2:12-CV-00562-MMD-VCF, 2012 U.S. Dist. LEXIS 80998, 2012 WL 2132279, *2 (D. Nev. June 12, 2012) (exercising supplemental jurisdiction over state contract claims brought alongside 1983 claims).

[14] "The Complaint contains three counts: Count 1 is against Defendant Highsmith; Count II is against Defendant Government of Guam; and Count III is against both Defendants Highsmith and the Government of Guam." *Gumataotao v. Highsmith*, 2023 U.S. Dist. LEXIS 42794, *4 (D. Guam Mar. 13, 2023).

[15] Because Gumataotao's claim was for retroactive money damages and did not seek prospective injunctive relief, the Court dismissed the claim against "GovGuam and Highsmith." *Gumataotao v. Highsmith*, 2022 U.S. Dist. LEXIS 58532, *4 (finding in Count III that the Defendants are not "persons" under Section 1983 and thus cannot be held liable under Section 1983). That is not the case plead in Jose's SAC.

over Gumataotao's state law claims insofar as they form part of the same case or controversy. *Id.* at *6-7.

Certainly, the facts of Jose's case show the high level of connection between his battery by GPD and the lack of any supervision, training or discipline provided by senior GPD officers in charge of making and enforcing policy and standards of conduct. Simply put, the tort claims substantially overlap with the main federal claims brought under § 1983. Moreover, here, none of the reasons for declining to exercise supplemental jurisdiction apply. Nothing novel or complex exists in Guam law for a claim of police brutality and civil rights violations.[16] No federal claims have yet been dismissed, and no compelling or exceptional circumstances exist to justify declining to exercise supplemental jurisdiction over the overlapping and intertwined Guam law tort claims.

**CONCLUSION**

For each and all of the foregoing reasons, the Court should deny the Motion for Summary Judgment or in the Alternative Dismissal of all Counts against Defendants Diaz, Fabila, and Barcinas. Should the Court decide to dismiss Jose's federal or state law claims, Jose should be granted leave to amend to conform to proof at trial.

DATED this 17 day of July, 2026.

**LAW OFFICE OF DANIEL J. BERMAN**
Attorneys for Plaintiff

By: [signature]
**DANIEL J. BERMAN**

[16] Additionally, when a plaintiff alleges a violation of constitutional rights under 42 U.S.C. § 1983, it is highly unlikely that state law tort claims will substantially predominate. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 790 (3d Cir. 1995). The state law claims do not predominate here. *See, e.g., Schmidt v. County of Nev.*, 2011 U.S. Dist. LEXIS 14492, *11-12, 2011 WL 445836 (E.D. Cal. Feb. 7, 2011) ("the federal Section 1983 claim is not merely an appendage to plaintiff's state law claim. Instead, ... the facts giving rise to both plaintiff's state law claims and plaintiff's constitutional claims are so interrelated ...Therefore, the state law claims do not predominate, and, for purposes of efficiency, the court does not decline to exercise supplemental jurisdiction); *see also Miller v. Lovett*, 879 F.2d 1066, 1072 (2d Cir. 1989) (holding that it was an abuse of discretion to dismiss state law tort claims for assault and negligence arising out of the same incident which the plaintiff alleged constituted a civil rights violation under Section 1983).