# TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 687-9294

*Attorneys for Defendants*
*Kendall J.N. Diaz, Aren L. Fabila,*
*John W. Barcinas, Patrick G. Corpuz*
*and Donald Flickinger*

IN THE DISTRICT COURT OF GUAM

----------

| | |
|---|---|
| JOSE ARLINE DADIVAS DEVELLES | CIVIL ACTION NO. 1-24-cv-00019 |
| Plaintiff, | |
| vs. | **REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS KENDALL J.N. DIAZ, AREN L. FABILA, JOHN W. BARCINAS' MOTION FOR SUMMARY JUDGMENT** |
| GOVERNMENT OF GUAM, KENDALL J.N. DIAZ, AREN L. FABILA, JOHN W. BARCINAS, PATRICK G. CORPUZ AND DONALD FLICKINGER and DOES 1 TO 10, | |
| Defendants. | |

On July 17, 2026, Plaintiff, Jose Arline Dadivas Develles, ("Plaintiff" or "Develles") filed his Opposition to Defendants Kendall J.N. Diaz ("Diaz"), Aren L. Fabila ("Fabila") and John W. Barcinas ("Barcinas") (collectively "moving Defendants") Motion for Summary Judgment or in the Alternative Dismissal of All Counts.

In his Second Amended Complaint ("SAC"), Develles alleges claims against the moving Defendants for Count I-Assault, Count II-Battery, Count III-Intentional Infliction of Emotional Distress, Count IV-Negligence, Count VII-Deprivation of Federal Civil Rights (42 U.S.C. § 1983), Count XI-Conversion and Count XII - Attorney's Fees. Additional Claims are asserted against Fabila in Count VIII - Failure to Intervene (42 U.S.C. § 1983) and Count X-Supervisor Liability. Moving Defendants moved for summary judgment and dismissal of the claims against them. Moving Defendants herein submit their Reply supported by the below Memorandum of Points and Authorities, Motions filed by Defendant government of Guam and the pleadings on file herein.

## "FACTS" ALLEGING EXCESSIVE FORCE

This action begins with the law ful traffic stop of Plaintiff's vehicle at approximately 1:40am on March 4, 2023. Plaintiff alleges numerous "facts" in his Opposition and his Declaration filed concurrently. Plaintiff alleges that Diaz, Fabila, and "at least one other officer pulled Jose violently from his vehicle causing him to fall very hard on the ground." ECF 40 at ¶22; Jose Decl. ¶5. Jose alleges that Officer Fabila and other GPD officers "punched the back of Jose's head and struck his left eye or caused his eye to strike the ground through their actions." *Id.* at ECF. 40, ¶23; Jose Decl. , ¶6. "Officers of the GPD also caused him to suffer great pain and injury to his back and ribs through their actions." ECF. 40, ¶ 24; Jose Decl. at ¶¶7-8.

Regarding Plaintiff's claims for assault and battery Plaintiff asserts that moving Defendants and unnamed GPD officers "intentionally threatened Jose" and pulled "Jose from his vehicle, without his consent." ECF 40, ¶138. Plaintiff asserts that due to his "senior age, cancer recovery, weak and demure physical characteristics, he was easy prey to be beaten and robbed by the designing officers of the GPD." *Id.* at ¶141. Plaintiff alleges Diaz, Fabila, and Barcinas pulled Jose from his vehicle without his consent, and "then threw Jose ... to the ground and proceeded to beat him until Jose was severely injured." *Id.* at ¶ 46-47. However, these statements are contradicted by Plaintiff's admission that he does not "... know who struck him, how he was struck, how many times..." thus defeating his individual assault and battery claims against the moving Defendants. (ECF 40 at ¶¶22-25, Opposition at p. 12.)

Plaintiff alleges Intentional Infliction of Emotional Distress (Count III), *Id.* at ¶¶52-58, and Negligence (Count IV) against Diaz, Fabila and Barcinas. *Id.* at ¶¶59-63. He alleges that "Defendants knew or should have known of his constitutional rights at the time of the complained of conduct as they were clearly established at that time." *Id.* at ¶96. Additionally he alleges that Diaz, Fabila, and Barcinas, together with other unnamed GPD officers, "used excessive force at the time they unreasonably and unlawfully pulled Jose from his vehicle and aggressively beat him." *Id.*, ¶98; Jose Decl., ¶14.

The Supreme Court has ruled that "whether the conduct of which the plaintiff

TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

complains" violated clearly established law. It ... is a question of law" that courts are competent to resolve. The legal question of whether there was a violation of clearly established law and the defense of qualified immunity can be resolved by the Court. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

It is undisputed that all of the complained of actions took place during the traffic stop and arrest of Plaintiff. In setting forth his facts nowhere does Plaintiff state that he engaged in the unlawful actions of refusing to comply with Officer Diaz's lawful commands. Officer Diaz was alone at 1:40am on the traffic stop. Defendant Diaz's commands were routine and the Plaintiff's refusals were unreasonable. Diaz reasonably believed his safety was at risk so he took the logical and prudent step of calling for backup.

Plaintiff asserts claims of Assault (Count I), Battery (Count II), Intentional Infliction of Emotional Distress (Count III), and Negligence (Count IV) against Diaz, Fabila and Barcinas. ECF at ¶¶52-63. In that regard Plaintiff alleges Diaz "intentionally threatened Jose" but does not identify the threatening words. Jose characterizes himself as "... a diminutive, weak, much smaller and older man, who was pulled"... from his vehicle, without his consent". He states that he was thrown by unidentified officers to the ground who "... proceeded to beat him until Jose was severely injured." *Id.* at ¶¶ 46-47. ECF. 40 at ¶38.

Plaintiff asserts that Diaz, Fabila, and "at least one other officer pulled Jose violently from his vehicle causing him to fall very hard on the ground." ECF 40, at ¶ 22. Jose further alleges that due to his "senior age, cancer recovery, weak and demure physical characteristics, he was easy prey to be beaten and robbed by the designing officers of the GPD." *Id.* at ¶ 41. Plaintiff emphasizes his status as a 63-year-old senior citizen of slim build (5'4" to 5'6", 130–135 lbs), claiming he lacked the physical strength to actively resist. (ECF 40, ¶17). The Supreme Court has made clear that broad references to a plaintiff's age or weight and broad references to a plaintiff's age or weight do not automatically strip an officer of immunity when confronted with active resistance. The fact that a suspect is smaller does not grant him a right to resist a lawful arrest. When a suspect physically

TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

resists, officers are legally authorized to escalate their force proportionally to overcome that resistance and maintain control.

Plaintiff also alleges that Defendant Diaz "...violently threw Jose onto the ground and maliciously assaulted and battered him". Diaz removed Plaintiff from his vehicle and when Barcinas arrived he saw the two parties struggling with each other. At that point Plaintiff was actively resisting arrest and Barcinas quickly went to help Diaz. Jose alleges that Fabila, Barcinas, and other GPD officers surrounded Jose's vehicle to gang up with Diaz on Jose. Plaintiff alleges that Officer Fabila and other unidentified GPD officers "punched the back of Jose's head and struck Jose's left eye or caused Jose's eye to strike the ground through their actions." ECF 94, at ¶6. Finally, Plaintiff asserts that unspecified "Officers of the GPD also caused Jose to suffer great pain and injury to his back and ribs through their actions." ECF 40 at ¶24; ECF at 94, at ¶¶7-8. Despite these allegations Plaintiff's hospital evaluation indicated no fractures and he was released with the recommended treatment of tylenol and ice. (ECF 40, Exhibit "A" at ¶¶66-68).

Jose sues Diaz, Fabila, and Barcinas in their individual capacity under 42 U.S.C. 1983 in Count VII. *Id.* at ¶¶87-102. Importantly, Jose specifically alleges that Defendants knew or should have known of Jose's constitutional rights at the time of the complained of conduct as they were clearly established at that time." *Id.* at ¶96. He alleges Diaz, Fabila, and Barcinas, together with other unidentified GPD officers, "used excessive force at the time they unreasonably and unlawfully pulled Jose from his vehicle and aggressively beat him" *Id.* at ¶98;.

The Opposition describes Plaintiff as a cancer survivor and "easy prey". ECF 93 at p.1. These allegations are irrelevant and prejudicial to his claims as moving Defendants could not have been known of Plaintiff's medical history. It further implies that officers are predatory and that smaller individuals never put officers safety in jeopardy. In all, these general conclusory allegations do not put the three police officers on notice of who is accused of doing what actions, which moving Defendants acted illegally, and what actions towards Plaintiff violated his fourth amendment rights.

## EVEN THOUGH FACTUAL DISPUTES EXIST, THE
## MOVING DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

This case falls within the defense of Qualified Immunity that shields officers from civil liability for actions performed in their official capacity, unless a clearly established statutory or constitutional right was violated. *Harlow v. Fitzgerald,* 457 US 800, 818 (1982). Qualified immunity has two prongs: (1) whether a constitutional right was violated, and (2) whether that right was "clearly established" at the time. The Supreme Court has repeatedly warned lower courts not to define "clearly established law" at a high level of generality. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 US 386, 396-97 (1989). *Graham* is the foundational case establishing that force must be judged from the perspective of a reasonable officer on the scene, making allowances for split-second decisions in tense, uncertain situations.

A police officer's use of force violates the Fourth Amendment when it is not "objectively reasonable." *Graham,* supra at 397 (1989). The inquiry into reasonableness requires assessing the "totality of the circumstances." *Id.*, at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). A claim that a law enforcement officer used excessive force during a stop or arrest is "analyzed under the Fourth Amendment." *Graham*, supra, at 395. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," especially in fast-moving excessive force scenarios. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) Officers cannot be denied immunity unless existing precedent squarely governs the specific facts at issue. If no precedent finding a Fourth Amendment violation under similar circumstances ... the officers are entitled to qualified immunity. *City of Tahlequah v. Bond*, 595 U.S. 9, 14 (2021) (Per Curium), quoting *Malley v. Briggs*, 475 US 335, 341 (1986).

In *Barnes v. Felix, 605 US ___ (2025)* the Supreme Court reaffirmed that the

requisite Fourth Amendment analysis for assessing whether an officer acted reasonably in using force, the court must consider all the relevant circumstances, including facts and events leading up to the climactic moments of injury. In that case "Roberto Felix, Jr., a law enforcement officer patrolling a highway outside Houston, received a radio alert about an automobile on the road with outstanding toll violations. Felix spotted the car, a Toyota Corolla, and turned on his emergency lights to initiate a traffic stop. The driver, Ashtian Barnes, pulled over to the highway's shoulder. "*Id.*

"Parking his own car just behind, Felix walked to the Corolla's driver-side door and asked Barnes for his license and proof of insurance. Barnes replied that he did not have his license with him, and that the car was a rental in his girlfriend's name. As he spoke, Barnes rummaged through some papers inside the car, causing Felix to tell him several times to stop "digging around." Felix also commented that he smelled marijuana, and asked if there was anything in the car he should know about. Barnes responded that he might have some identification in the trunk. So Felix told him to open the trunk from his seat. Barnes did so, while also turning off the ignition. All that happened ... in less than two minutes."

"Felix told Barnes to get out of the car. Barnes opened the door but did not exit; instead, he turned the ignition back on. Felix unholstered his gun and, as the car began to move forward, jumped onto its doorsill. He twice shouted, "Don't fucking move." And with no visibility into the car (because his head was above the roof), he fired two quick shots inside. Barnes was hit, but managed to stop the car. Felix then radioed for back-up. By the time it arrived, Barnes was dead. All told, about five seconds elapsed between when the car started moving and when it stopped."

Barnes's mother sued Felix under 42 U. S. C. §1983, and alleged that Felix had violated Ashtian Barnes's Fourth Amendment rights by using excessive force against him. The District Court granted summary judgment to Felix. The District Court identified that moment of threat as "the two seconds before Felix fired his first shot," when he was standing on the doorsill of a moving vehicle. Citation omitted. At that moment, the court found, an officer could reasonably think himself "at risk of serious harm." Citation

TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

omitted. Under the Fifth Circuit's moment of threat doctrine that fact alone concluded the analysis to the "exact moment Felix was hanging onto Barnes's" moving car. Because Felix could then have reasonably believed his life in danger, the panel concluded, his decision to shoot "did not violate Barnes's constitutional rights." Citation omitted. On review the Court reinforced that the full context—including the suspect's initial non-compliance and active resistance—must dictate the reasonableness of the officer's response.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Terry v. Ohio* 392 U. S. 1, 20-22. The same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Johnson v. Glick* 481 F.2d 1028, 1033. Reasonableness depends "on a balance between the public interest and the individuals right to personal security free from arbitrary interference by law officers. *United States v. Brignoni-Ponce*, 422 US 873,878 (1975). The Supreme Court heavily protects officers under this doctrine when they make split-second control decisions. Here, unless the plaintiff can point to a nearly identical, pre-existing case where an officer was successfully sued for using the exact same amount of force against a smaller person who was actively resisting in the same manner, the officer is entitled to qualified immunity.

Applying the standard articulated in *Barnes* and *Graham,* supra, at 396, the moving Defendant Officers' actions must be evaluated based on the rapidly evolving, tense circumstances they encountered on the scene, rather than in hindsight. This analysis requires careful attention to the facts and circumstances of each particular case, including: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Importantly, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.*

Each of the three *Graham* benchmarks heavily weighs in favor of the officers:

Officer Diaz initially stopped Plaintiff at approximately 1:40 a.m. for speeding. However, Plaintiff's post-incident medical records reveal a Blood Alcohol Concentration (BAC) of .094% taken two hours after the stop—firmly exceeding the statutory legal limit of .08%. Operating a motor vehicle while heavily intoxicated is a severe public safety threat, which heightened the severity of the offense and the objective danger facing the lone officer at the start of the interaction.

The stop occurred in the dead of night (1:40 a.m.). When requested to produce his license and registration, Plaintiff repeatedly refused. Plaintiff admittedly conditioned his compliance on demands to view the officer's radar equipment and flatly refused multiple commands to step out. Plaintiff was not pulled over based on radar but instead had been paced because of his speeding. Calling for backup and classifying a driver as an "Adam Henry" (GPD police slang for a hostile, non-compliant individual) is a standard, procedurally sound response to active resistance. When ordered to exit the vehicle, Plaintiff again refused and began acting "fidgety," moving around in his seat out of the immediate view of Officer Diaz. A reasonable officer on the scene confronted with a non-compliant, erratic driver making unviewable movements inside a vehicle late at night has a legitimate, objective fear for his own safety. Officer Diaz was fearful and legally authorized to remove the driver to secure the scene and such action is not a violation of the Fourth Amendment. (See *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)).

When Officer Diaz attempted to extract him, Plaintiff actively resisted and further resisted being handcuffed, requiring Officers Fabila and Barcinas to assist in subduing him and eventually placing him in handcuffs. Even though officers didn't know Plaintiff's exact blood alcohol number at 1:40 a.m., the .094 level, two hours after the stop, establishes a clear medical record while perhaps explaining why Plaintiff was behaving erratically, being combative, and refusing commands.

Plaintiff's size does not mean he was not a threat to officer safety. Any injuries sustained to Plaintiff's eye, back, or ribs were the direct result of the physical momentum required to overcome his active resistance on the ground and to force a combative,

TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

intoxicated suspect into handcuffs. The officers followed standard Guam Police Department (GPD) backup and physical control protocols to neutralize an actively resisting individual for their own safety. Their actions were objectively reasonable as a matter of law and did not violate Plaintiff's constitutional civil rights through the use of excessive force despite the unfortunate injuries sustained by Plaintiff.

The recent Supreme Court's decision in *Zorn v. Linton*, 607 U.S. ___ (2026) is the absolute authority reinforcing that even if the facts of force are disputed, qualified immunity must be granted unless a plaintiff provides a highly fact-specific precedent that outlaws the officer's exact actions. *Zorn* summarily reversed a lower court's denial of qualified immunity, reinforcing that excessive force claims require a "high degree of specificity" in prior precedent before an officer can be stripped of protection. In *Zorn*, an officer used a routine pain-compliance rear wristlock to lift and remove a passively resisting protestor from a government building after issuing multiple verbal warnings. Even though the plaintiff alleged severe, permanent physical injuries, the Supreme Court held that the officer was entitled to qualified immunity because no prior case law put the officer on clear notice that using standard tactical maneuvers following a verbal warning was unconstitutional. The Supreme Court explicitly noted that broad concepts or subjective terms like "gratuitous force" fail to provide meaningful guidance to officers making split-second decisions.

Under the strict requirements of *Zorn*, the presence of a factual dispute regarding the exact degree of force used does not defeat qualified immunity unless Plaintiff can identify precedent outlawing the officers' precise response to a non-compliant, non-cooperative driver during a late-night traffic stop. Like the plaintiff in *Zorn*, who asserted permanent physical injuries from an extraction tactic.

Plaintiff has failed to show any clearly established law prohibiting officers from forcefully extracting an uncooperative driver who repeatedly refused lawful commands to provide identification, exit his vehicle or be handcuffed. Broad references to a plaintiff's age or weight do not automatically strip an officer of immunity when confronted with

**TORRES LAW GROUP**
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891

active resistance. Even if Plaintiff's version of the facts were true, the officers are still entitled to qualified immunity because their conduct did not violate clearly established law. Monday morning quarterbacking of what happened should not be substituted for the reasonable approach taken by the officers in the early morning hours of March 4, 2023.

Plaintiff cites to the Ninth Circuit that when the question of whether officers violated the Fourth Amendment turns on disputed issues of material fact, qualified immunity may not be resolved at summary judgment. *Santos v. Gates*, 287 F.3d 846, 855 (9th Cir. 2002); *Lolli v. County of Orange*, 351 F.3d 410,421 (9th Cir. 2003). Both of these cases involved severe allegations of law enforcement using excessive force and violating the individual's civil rights. The plaintiffs and the officers offered drastically different, conflicting stories about how the violence occurred.

In *Santos*, *supra*, Kam Santos was a parolee who fled on foot when approached by Los Angeles Police Department (LAPD) officers. Santos claimed that after being cornered by a barbed-wire fence, he voluntarily surrendered by dropping to his knees with his hands behind his head. He alleged that LAPD officers still violently tackled him, broke his back, and permanently paralyzed him.

The officers claimed that Santos did not surrender peacefully, resisted their commands, and went limp unexpectedly while being handcuffed, causing his own injuries. The district court initially threw out Santos's lawsuit by giving the officers qualified immunity. However, the Ninth Circuit reversed that decision. The appellate court held that because there was a direct, glaring conflict in the evidence regarding how much force was actually used and whether Santos was actively resisting, the judge could not legally grant summary judgment.

In *Lolli,* *supra*, John Kenneth Lolli was arrested and taken to the Orange County Men's Jail. Lolli, a Type I diabetic, told jail guards he was going into severe diabetic shock and desperately needed food or insulin. He testified that instead of helping, multiple sheriff's deputies brutally beat him, kicked him, sprayed him with pepper spray, and left him with a ruptured eardrum and three fractured ribs.

TORRES LAW GROUP
285 CLUBHOUSE DRIVE
YONA, GUAM  96915
TELEPHONE: (671) 477-9891

Ninth Circuit cases like *Santos* and *Lolli* do not preclude summary judgment here. *Santos* and *Lolli* only prevent summary judgment if the factual dispute is material to the constitutional violation. Plaintiff makes no allegation or statement of physical mistreatment after he was subdued and handcuffed. The moving Defendants complied with Guam statutory laws and GPD procedure constituting objective reasonableness. The officers utilized standard tactical procedures. A reasonable officer cannot be expected to know their conduct is unconstitutional if they are actively following standard law enforcement protocols that have never been struck down by a court. Any factual disagreement here does not matter because under either version of the story, the officer's actions were objectively reasonable based on the information they had at that exact moment.

While Plaintiff relies on *Santos*, *supra*, and *Lolli*, *supra*, to argue that any factual dispute regarding excessive force requires a jury trial. This argument misinterprets the strict mandates of the qualified immunity doctrine. Plaintiff has not and cannot point to any controlling Supreme Court or Ninth Circuit precedent that placed the constitutional question "beyond debate" under these specific circumstances. Even assuming Plaintiff's claims ***could be believed by a jury, Zorn*** establishes that absent prior case law putting the officers on clear notice that using standard tactical maneuvers following a verbal warning was unconstitutional, the law still protects the officers (emphasis added). Plaintiff has not established that the Defendant officers acted with knowledge of any established constitutional case law and violation of such constitutional right proscribed their behavior in caring out their duties. Contrary to Plaintiff's arguments and accepting the Plaintiff's facts, for the sake of the motion, does not amount to a violation of a "clearly established" constitutional right as established by *Zorn*.

The law grants broad latitude for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. Unless the Plaintiff can point to a nearly identical, pre-existing case where an officer was successfully

sued for using the exact same amount of force against a smaller person who was actively resisting in the same manner, the officer is entitled to qualified immunity. Here, the record conclusively establishes that the moving Defendant Officers strictly conformed to standard department operating procedures and state-approved tactical guidelines. Following mandatory procedural protocols in a volatile environment is strong evidence of objective reasonableness. Because the Officers utilized standard, non-deadly, and approved techniques to gain compliance, they did not act with "plain incompetence" nor did they "knowingly violate the law." *Mullenix*, supra, at 12. Because the Officers' actions fell squarely within procedural boundaries and lack any highly specific contrary precedent, qualified immunity shields them from suit. Therefore, even if this Court accepts Plaintiff's version of the conflicting facts solely for the purpose of this Motion, Plaintiff's claims must fail as a matter of law and Summary Judgment must be granted.

<strong>CONCLUSION</strong>

Even when adopting the version of the facts for the sake of the argument, his non-compliance, intoxication, and active resistance legally justified the officers' escalation of control tactics . Because Plaintiff cannot identify controlling Supreme Court or Ninth Circuit case law stating that an officer cannot use standard extraction and takedown techniques on a lawfully stopped and uncooperative, non-compliant driver at 1:40 a.m., qualified immunity applies. Summary judgment must be granted or claims against the moving Defendants dismissed. Based upon moving Defendants' Motion and Reply to Plaintiff's Opposition, Defendants respectfully request that their Motion for Summary Judgment be granted. Upon granting of Summary judgement the Court should decline to exercise Jurisdiction over any remaining claims so the local Superior Court may rule on local matters.

*Respectfully submitted* this 31st day of July, 2026.

**TORRES LAW GROUP**

/s/

By _____
**PHILLIP TORRES, ESQ.**
*Attorneys for Defendants*

**TORRES LAW GROUP**
285 CLUBHOUSE DRIVE
YONA, GUAM 96915
TELEPHONE: (671) 477-9891